(Supreme Court, Trial Term, Erie County.   July 10, 1912.)

COMMERCE (§ 27*)—INJURY TO SERVANT—EMPLOYERS' LIABILITY ACT—"ENGAGED IN INTERSTATE COMMERCE."

A brakeman on a train running between points in this state, but consisting in part of freight cars consigned to points outside the state, injured by the negligence of a fellow servant while engaged at a siding in cutting out cars shipped from and billed to points in this state, was engaged in interstate commerce within the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), so that an action for his injury could be maintained thereunder; his work at the siding being merely an incident to the operation of the entire train in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 3, pp. 2392–2394; vol. 8, pp. 7649–7651.]

Action by Bernard J. Carr against the New York Central & Hudson River Railroad Company.   Motion by the defendant for a new trial after a verdict for plaintiff.   Motion denied.

Alfred L. Becker, for the motion.

Hamilton Ward, opposed.

WHEELER, J.   The plaintiff was a brakeman in the employ of the defendant, and one of the crew on what is known as "pickup train No. 181," running between Rochester and Buffalo, via Lockport and Tonawanda.   This train took on cars at various stations along the way, and also dropped off cars destined for local intermediate stations.

When this train reached the village of Tonawanda, N. Y., there were in the train quite a number of cars loaded with freight, destined and consigned to points outside the state of New York; in other words, the train was engaged in both interstate and intrastate commerce.   In the train was New York Central gondola car No. 71385, loaded with freight and billed to North Tonawanda, and Pennsylvania box car No. 576204, loaded with freight, and billed to Batavia, N. Y.   Both of these cars had been loaded and shipped from Medina, N. Y.   Orders were given the train crew to cut these two cars out of the train at North Tonawanda, N. Y., and place them on the siding at that point, the gondola car to be there unloaded by the consignee, and the Pennsylvania box car to be sent on from there to Batavia by the so-called "peanut" branch of the defendant's road. These two cars were in the train next to the engine.   On arriving at North Tonawanda, a cut was made in the train, and the engine hauled the two cars ahead, and then backed them down upon the siding where the cars were to be left.   The plaintiff was directed to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

climb to the top of the Pennsylvania box car and set the hand brake, so that the car would not move after being placed on the siding. He was engaged in doing this when his fellow brakeman uncoupled the compressed air hose connecting the two cars with the engine, without first turning the angle cocks connected with the compressed air brake system in use. The effect of his so doing was to release the compressed air in the tanks under the car, and to set the brakes, and at the same time cause the wheel used by the brakeman to set the brake by hand to rapidly revolve. In this instance, not only did the brake wheel rapidly revolve, but it revolved in the opposite direction from those on cars in common use. As the plaintiff at the moment was on top of the box car turning the brake wheel, the sudden reverse motion operated to throw him from the car, and in falling he broke the heel bone of his foot, more or less seriously injuring him.

It appeared that the proper and usual practice is to turn the angle cocks in question before attempting to uncouple the hose connections, and the plaintiff charged that the fellow brakeman of the plaintiff was guilty of negligence in doing what he did, and that, under the federal Employers' Liability Act, the negligence of the fellow brakeman is to be deemed the negligence of the railroad, and is liable for the injuries received. The case was submitted to the jury upon that theory, and the jury was instructed by the court that if they found the fellow brakeman in fact negligent, as claimed, then the plaintiff was entitled to recover.

The defendant contended on the trial, and now contends on this motion, that the plaintiff at the time of the accident was not engaged in interstate commerce, but was doing things wholly relating to intrastate commerce, and that the federal Employers' Liability Act has no application to the facts developed on the trial of this action, and above recited. The defendant argues that at the time of the accident to the plaintiff he and his associates were engaged in placing on the siding at Tonawanda cars shipped from points within the state to other points within the state, which in no sense constituted interstate commerce, and that therefore the federal act cannot apply, but the defendant's liability is to be governed by the rules of the common law, and inasmuch as, under the rules of common law, the accident was caused by the negligence of a fellow servant, there can be no recovery in this action.

The jury rendered a verdict for the plaintiff, and the defendant now moves to set the verdict aside, and for a new trial upon the law and the facts.

We thus have presented for our consideration the very interesting question of law as to whether or not the plaintiff is entitled to the benefit of the provisions of the federal statute. The present act of Congress is as follows:

"An act relating to the liability of common carriers by railroad to their employés in certain cases.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that every common carrier by railroad while engaging in commerce between any of the several states or

territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. * * * " Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322).

For the purposes of this case, it is unnecessary to quote anything beyond the first section as given above. It abolishes the fellow servant doctrine in negligence cases, and makes the carrier liable for the negligence of its employés where other employés are killed or injured. The constitutionality of the act has been sustained by the Supreme Court of the United States in what is known as the "Second Employers' Liability Cases" (Mondou v. N. Y., N. H. & H. R. R. Co., and other cases), 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. ——.

The Supreme Court, however, has not decided the question here presented, as to whether the federal act applies to a case like the one in hand. We have, however, conflicting views and decisions of the lower United States courts expressing diametrically different views and conclusions on the questions before the court in this case. The widely divergent view entertained by the lower courts is illustrated on the one hand by the case of Van Brimmer v. Texas & Pacific R. R. Co. (C. C.) 190 Fed. 399; and, on the other hand, by that of Behrons v. Illinois Central R. R. Co. (D. C.) 192 Fed. 581.

In the Van Brimmer Case the facts were substantially the same as those in the case now under consideration, and the court held that in setting out cars loaded with freight shipped from one point in a state to another point in the same state a train crew were "engaging" in an act in furtherance of the purely domestic and intrastate commerce of the defendant. That being so, the provisions of the act of Congress known as the "Employers' Liability Act" do not apply.

On the other hand, in the Behrens Case, a fireman of one of the defendant's switch engines was killed while working on an intrastate train, although a good share of the time engaged in interstate commerce. The action was brought solely under the federal Employers' Liability Act. He was a member of a switching crew, who reported for duty at a suburb of New Orleans, made up a train of empties intended for various destinations, and hauled these empties to another point near New Orleans, and from the second point hauled another train back to the starting point. At the time of the accident all of the cars of the train had originated at and were destined to points in the state. The court held that the employé killed was protected by the provisions of the federal act. The court said:

"I consider that the usual and ordinary employment of the decedent in interstate commerce mingled though it may be with employment in com-

merce which is wholly intrastate, fixes his status and fixes the status of the railroad, and the mere fact that the accident occurred while he was engaged on an intrastate train, rather than a few minutes earlier or later, when he might have been engaged on an interstate train, is immaterial. If he was engaged in two occupations, they are so blended as' to be inseparable, and, where the employé himself has no control over his own actions and cannot elect as to his employment, the court should not attempt to separate and distinguish between them."

In the case of Zikos v. Oregon R. & M. Co. (C. C.) 179 Fed. 893, decided in the Circuit Court for the Eastern District of Washington, the court went to the extent of holding that a section workman, working under the direction of a section boss, who was injured by the head of a spike flying off and striking him while he was attempting to drive a spike in a tie under the rails of a railroad, was engaged in interstate commerce, because, while the tracks were used in intrastate commerce, they were also used in interstate commerce, and the act of the workman was necessary to that commerce.

While interesting, it is probably unprofitable to cite further cases illustrating the divergent views of the courts as to the extent and limitations of the federal employers' liability statute in its application to the varying combination of circumstances which may present themselves for adjudication. In the absence of any controlling decisions of the courts of this state, and in view of the conflict of opinion in the United States courts, we feel at liberty to investigate the questions here presented de novo, and reach such conclusions as best we can on the merits of the case.

It is conceded that the train and crew of the defendant in this case, while hauling the train from Rochester to Buffalo, were engaged in interstate commerce. Can it fairly be said that during the 10 or 20 minutes they were engaged in cutting out the two cars in question and placing them on the siding at Tonawanda they ceased to be so engaged? May it not be fairly argued that the placing of these cars on the siding was simply an incident to the operation of the entire train engaged in interstate commerce? Can it be distinguished in principle from the attaching of those cars to the train at the local station by the crew; and can it be successfully argued that when men engaged in operating an interstate train for the convenience of the railroad, take onto such a train intrastate cars, they cease to be for that particular act interstate commerce agents? Is not the sounder and wiser view to regard such a train crew as retaining all the time, even when performing isolated acts relating to intrastate commerce, the legal relationship of men engaged in moving interstate commerce, and entitled to the protection of the federal statute?

We are of the opinion that the recent decision of the United States Supreme Court in the second Employers' Liability Cases, 223 U. S. 1, 47, 32 Sup. Ct. 169, 174, 56 L. Ed. ——, sustain this view. Justice Van Devanter, speaking for the court, in his opinion said, in reference to the act and the power of Congress to legislate on the subject of interstate commerce:

"This power over commerce among the states, so conferred upon Congress, is complete in itself, extends incidentally to every instrument and

agent by which said commerce is carried on, may be exerted to its utmost extent over every part of such commerce, and is subject to no limitations save such as are prescribed in the Constitution. But, of course, it does not extend to any matter or thing which does not have a real or substantial relation to some part of such commerce."

Later in his opinion the learned justice, discussing the constitutionality of the act, says:

"The second objection proceeds upon the theory that even although Congress has power to regulate the liability of a carrier for injuries sustained by one employé through the negligence of another, where all are engaged in interstate commerce, that power does not embrace instances where the negligent employé is engaged in intrastate commerce. *But this is a mistaken theory, in that it treats the source of the injury, rather than its effect upon interstate commerce, as the criterion of congressional power.* As was said in Southern Railway Co. v. United States, 222 U. S. 20–27, 32 Sup. Ct. 2, 56 L. Ed. ——, that power is plenary, and competently may be exerted to secure the safety of interstate transportation and of those who are employed therein, no matter what the sources of the danger which threaten it. The present act, unlike the one condemned in Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297, deals only with the liability of a carrier in interstate commerce for injuries sustained by the employés while engaged in such commerce. *And, this being so, it is not a valid objection that the act embraces instances where the causal negligence is that of an employé engaged in intrastate commerce; for such negligence, when operating injuriously upon an employé engaged in interstate commerce, has the same effect upon that commerce as if the negligent employé were engaged therein.*"

In the case of Southern Railway Co. v. United States, 222 U. S. 20–27, 32 Sup. Ct. 2, 56 L. Ed. —— the Supreme Court held that the Safety Appliance Act of March 2, 1893, embraced all locomotives, cars, and similar vehicles used on any railroad that is a highway of interstate commerce, and is not confined exclusively to vehicles engaged in such commerce, and therefore, where interstate and intrastate commerce are commingled in transportation over highways of interstate commerce, that trains and cars on the same railroad, whether engaged in one form of traffic or the other, are interdependent, and that absence of safety appliances from any part of a train is a menace, not only to that train, but others. The court, therefore, upheld a conviction of a railroad for failure to comply with the safety appliance act of Congress, although the cars on which the appliance was absent were cars engaged solely in intrastate commerce, but placed in a train also moving interstate commerce cars.

These two cases so recently decided by the Supreme Court clearly indicate that that court in applying these acts is disposed to give them the broadest construction. The court also lays down certain principles which, when applied to the facts of this case, are, in our opinion, decisive of it.

If we assume that the immediate act of placing the two cars on the siding at Tonawanda was not an act of interstate commerce, nevertheless that fact or circumstance the Supreme Court says is not controlling in determining the liability of the defendant under the federal statute. The fact that the negligent employé is engaged in intrastate commerce at the time does not control, but, as the court

said, it is "the effect of the injury upon interstate commerce" which is the criterion of Congressional power to legislate on the subject.

The defendant, the New York Central & Hudson River Railroad Company, was engaged generally in interstate commerce. This particular train was engaged in such commerce. The plaintiff and his fellow brakeman were engaged in interstate commerce when manning the train. Assuming they were doing intrastate commerce duties while placing the two cars in question, they still remained all the time in the employ of the defendant, and in charge of the operation of the interstate commerce train from which the two cars in question were taken. While cutting out the cars in question at Tonawanda, they still continued their relationship to the rest of the train as interstate commerce agents. Placing the cars upon the siding was but incidental to their main employment. Any accident or injury to one or more of the crew to that extent tended to un-man the train about to proceed in interstate commerce, and to disable one or more of such a crew might impede and delay the progress of the train on its way, and affect its safety and dispatch. The safety of the plaintiff, as one of the trainmen charged with the movement of the remaining cars of the train, had an important bearing and direct relationship to the movement of interstate commerce, and his injuries and consequent inability to discharge his duties as brakeman on the train about to proceed directly affected such commerce.

The case of Pedersen v. Del., Lack. & Western R. R. Co., 197 Fed. 537, 114 C. C. A. ——, recently decided by the United States Circuit Court of Appeals for the Third Circuit, holds substantially the same views, although the facts to which the law is applied in that case were very different and led to a different result.

We are of the opinion that these considerations make it quite clear that under the general doctrine laid down by the Supreme Court in the second Employers' Liability Cases the plaintiff in this case is entitled to the benefit of the federal act; that he must be deemed to have been in the continuing employment of the defendant engaged in interstate commerce, and the defendant became liable for the negligence of O'Brien, his fellow brakeman.

For these reasons, the motion for a new trial is denied.