No. 18,463.

JULIA F. THORNBRO, as Administratrix, etc., *Appellee,* v. THE KANSAS CITY, MEXICO & ORIENT RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

FEDERAL EMPLOYERS' LIABILITY ACT—*Death of Brakeman—Was Engaged in Interstate Commerce — Negligence — Want of Safety Appliances.* A brakeman in the service of an interstate common carrier running on a train consisting in part of cars containing interstate shipments of freight was required to assist in picking up a freight car loaded with chats standing on a siding, consigned from a point within the state

Thornbro v. Railway Co.

to another point within the state. This car was coupled to another in front of it which was attached to the engine, and the two cars were pulled out upon the main track in order to place the car of chats in the train. The brakeman was then required to uncouple it from the one in front which was not to be taken; to do this he necessarily went between the cars, and was killed because of a defective coupler upon the car to be taken out which was not equipped with an automatic coupler as required by the federal safety appliance acts.

It is *held*: (1) The brakeman when injured was engaged in interstate commerce, and the action for resulting damages for his death is within the purview of the federal employers' liability acts; (2) that the car referred to should have been equipped with couplers as required by the federal safety appliance acts; (3) the question whether the defective coupler was the proximate cause of the injury was one of fact properly submitted to the jury; (4) the defenses of contributory negligence and assumed risk are eliminated in actions under the federal employers' liability acts when the injury arises from a violation of the safety appliance acts; and (5) the statute under which the action is maintained does not limit the recovery, and the damages, $12,000, awarded in this case, considered in connection with the findings, do not show passion or prejudice on the part of the jury.

Appeal from Sumner district court; CARROLL L. SWARTZ, judge. Opinion filed March 7, 1914. Affirmed.

*John A. Eaton, D. W. Eaton, H. J. Eaton,* all of Kansas City, Mo., *W. T. McBride,* of Wellington, and *Chester I. Long,* of Wichita, for the appellant.

*J. D. Houston,* and *C. H. Brooks,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover damages for the death of J. N. Thornbro, a brakeman of the defendant company, in Oklahoma, under the provisions

of the federal employer's liability act of April 22, 1908, which provides:

"That every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in·case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves; or other equipment. . . . *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee. . . . Such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or· death of such employee." (Part 1, 35 U. S. Stat. at Large, ch. 149, p. 65, U. S. Comp. Stat. 1901, Supp. 1911, p. 1322.)

A freight train upon the defendant's railway, made up at Altus, Okla., proceeding eastwardly, stopped on June 27, 1909, at Custer City, where some switching was done. A car designated as a Frisco car, loaded with chats at Oklahoma City, destined for Canton, Okla., had been turned over to the defendant company at Custer by the St. Louis & San Francisco Railway Company on the preceding day, and was standing on the house track with a Rock Island box car immediately in front of it. The engine was detached from the train, switched to the house track and attached to the box car to which the Frisco car was coupled for the purpose of picking up the latter and putting it into the train for transportation to its destination. The two cars

were pulled out to the main track, and while upon that track, in an effort to uncouple the two cars in order to leave the Rock Island car, Thornbro was killed, because, as the petition alleged, of the defective and unsafe coupling appliances on the Frisco car, which defect required him to step between the cars to do his work by hand. The plaintiff recovered and the defendant appeals.

It is conceded that the defendant company was engaged in interstate commerce in operating the train, but it is earnestly insisted that the brakeman in doing the particular work in which he lost his life was not so engaged. In order to recover under the act referred to both the company and the employees must be engaged in interstate commerce at the time of the injury. (*Second Employers' Liability Cases*, 223 U. S. 1.) The precise contention of the defendant is that the car in question, starting from one point to be transported to another point in the same state, was an instrument of intrastate commerce; and that it had not become a part of an interstate train, and so the brakeman was not engaged in interstate commerce.

On the other hand, the plaintiff contends that the duties of the engineer and brakeman in picking up this car and putting it in the train, consisting largely of interstate cars carrying interstate freight, had such connection with interstate commerce as to bring their work within the purview of the act.

No decision of the federal supreme court has been cited upon the precise point in controversy, and the circuit courts appear to be at variance. In *Van Brimmer v. Texas & P. Ry. Co.*, 190 Fed. 394, it was held that a brakeman while engaged in making a flying switch to set out a car transported wholly in intrastate traffic from a train carrying interstate freight was not engaging in interstate commerce, and therefore the act in question did not apply to an injury received by him in doing such work. It was said that the brakeman

was with others merely completing the transportation of an intrastate car. That case was commenced in a state court and came before the federal court on a motion to remand, which was denied. Upon the question of removal, however, that opinion appears to have been disapproved in other circuits. (*De Atley v. Chesapeake & O. Ry. Co.,* 201 Fed. 591.)

Opposed to the Van Brimmer case is that of *Behrens v. Illinois Cent. R. Co.,* 192 Fed. 581, also a circuit court decision. That was an action to recover for the death of a fireman, one of a switch crew. It was the duty of the crew to switch cars moving in both state and interstate commerce indiscriminately at Chalmette, a terminal below New Orleans, to make up trains of empties intended for various destinations, and haul the train to Harrahan, a terminal above the city, and then take another train back to Chalmette. It was contended that the deceased employee was at the time engaged in intrastate commerce, not within the range of the federal employer's liability act, but the court, Foster, J., said:

"In my opinion, the construction sought to be secured by the defendant is entirely too narrow and restricted. Undoubtedly the act of Congress is in derogation of the common law; but certainly the elimination of the doctrine of fellow servant and the modification of the doctrines of contributory negligence and assumed risk makes for the betterment of human rights as opposed to those of property, and I consider that, in the light of modern thought and opinion, the law should be as broadly and as liberally construed as possible. . . . I consider that the usual and ordinary employment of the decedent in interstate commerce, mingled though it may be with employment in commerce which is wholly intrastate, fixes his status, and fixes the status of the railroad, and the mere fact that the accident occurred while he was engaged in work on an intrastate train, rather than a few minutes earlier or later, when he might have been engaged on an interstate train is immaterial." (p. 582.)

Thornbro v. Railway Co.

In *Lamphere v. Oregon R. & Nav. Co.*, 196 Fed. 336, 116 C. C. A. 156, the statute was construed to cover the case of a fireman employed by a company engaged in interstate commerce, who, with others, was being transported from one station to another to relieve the crew of an interstate train, and was killed while on the way. The court said:

"The deceased when he was killed was not only on his way to work for his employer, but he was proceeding under the direct and peremptory command of the Railroad Company to do a designated specific act in the service of the company, towit, to move a train then engaged in interstate commerce." (p. 338.)

Quotations were made in that case from the opinion in the Behrens case, and also from the opinion of the court of appeals of the second circuit in *Central R. of New Jersey v. Colasurdo*, 192 Fed. 901, 113 C. C. A. 379, wherein it was held that the statute applied to a trackman injured by a passing train while at work repairing a switch in terminal yards over which intrastate and interstate commerce was carried. Quotations were also made from the opinion in the *Second Employers' Liability Cases*, 223 U. S. 1. Following these quotations, it was said:

"As indicated in the opinion, the test question in determining whether a personal injury to an employee of a railroad company is within the purview of the act is, What is its effect upon interstate commerce? Does it have the effect to hinder, delay, or interfere with such commerce? As applied to the present case, it is this: Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce? To that question we think there can be but one answer. Under the imperative command of his employer, the deceased was on his way to relieve, in the capacity of a fireman, the crew of a train which was carrying interstate commerce, and the effect of his death was to hinder and delay the

44—91 KAN.

movement of that train. In our opinion the complaint states a cause of action under the Employer's Liability Act." (p. 340.)

In *Pedersen v. Del., Lack. & West. R. R.*, 229 U. S. 146, 33 Sup. Ct. Rep. 649, it was held that the case of an employee of an interstate railway killed while carrying bolts to repair a bridge used in both classes of commerce was within the provisions of the act in question, and the Lamphere case was cited with apparent approval. After referring to the work the deceased was doing when killed, the court said:

"Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?" (p. 151.)

After discussing the use of bridges in the operation of railroads, and holding that repairs upon them are so closely related to interstate commerce as to be in practice and legal contemplation a part of it, the opinion proceeds:

"The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements, and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?" (p. 151.)

In *Horton v. Oregon-Washington R. & Nav. Co.*, 72 Wash. 503, 130 Pac. 897, the case of a pumper for locomotives of a railroad engaged in commerce of both classes who was injured while upon a hand car furnished for his use in going to and from his home to the pumping station, by collision with an interstate train,

was held to be within the purview of the statute. It was said in the opinion:

" 'The act meant to include everybody whom Congress could include.' (*Colasurdo v. Central R. Co.*, 180 Fed. 832.) That such was the purpose and intent of the second act seems to be assumed by the supreme court of the United States in an opinion holding the act constitutional. . . . It may be remarked in passing, however, as showing the sweepingly broad construction placed upon the act and the true criterion of the congressional power, that in the *Second Employers' Liability Cases,* 223 U. S. 1, the supreme court expressly decided that the fact that the negligence which caused the injury was that of an employee engaged in intrastate commerce was immaterial, the true criterion being the effect of the injury upon interstate commerce, not the source of the injury." (p. 506.)

The opinion ably reviews many federal decisions, including the Behrens case, and demonstrates the power of congress in the situation presented and the efficacy of the act in such cases.

In *Carr v. New York Central & H. R. R. Co.*, 136 N. Y. Supp. 501, it appeared that a brakeman running on a train between points in the state, but consisting in part of cars consigned to points outside of the state, was injured by the negligence of a fellow servant at a siding in cutting out cars which had been shipped from and billed to places within the state. It was held that the brakeman was engaged in interstate commerce within the federal statute. Both the Van Brimmer case and the Behrens case were reviewed in the opinion with other cases. The court said:

"Placing the cars upon the siding was but incidental to their main employment. Any accident or injury to one or more of the crew to that extent tended to unman the train about to proceed in interstate commerce, and to disable one or more of such a crew might impede and delay the progress of the train on its way, and affect its safety and dispatch. The safety of the plaintiff, as one of the trainmen charged with the movement of the remaining cars of the train, had an important bear-

ing and direct relationship to the movement of interstate commerce, and his injuries and consequent inability to discharge his duties as brakeman on the train about to proceed directly affected such commerce." (p. 506.)

The federal circuit court decisions reviewing the scope of the act are numerous, and, as we have already seen, in two cases at least, contradictory. Other cases are cited and commented upon in Richey's Federal Employers' Liability Act.

In *Second Employers' Liability Cases,* 223 U. S. 1, it appeared that one of the injured employees whose case was under consideration was a car repairer engaged in replacing a draw bar in a car used in interstate commerce. In the opinion it was said:

"The second objection proceeds upon the theory that, even although Congress has power to regulate the liability of a carrier for injuries sustained by one employee through the negligence of another where all are engaged in interstate commerce, that power does not embrace instances where the negligent employee is engaged in intrastate commerce. But this is a mistaken theory, in that it treats the source of the injury, rather than its effect upon interstate commerce, as the criterion of congressional power. As was said in *Southern Railway Co. v. United States,* 222 U. S. 20, 27, that power is plenary and competently may be exerted to secure the safety of interstate transportation and of those who are employed therein, no matter what the source of the dangers which threaten it. The present act, unlike the one condemned in *Employers' Liability Cases,* 207 U. S. 463, deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employees while engaged in such commerce. And this being so, it is not a valid objection that the act embraces instances where the causal negligence is that of an employee engaged in intrastate commerce; for such negligence, when operating injuriously upon an employee engaged in interstate commerce, has the same effect upon that commerce as if the negligent employee were also engaged therein." (p. 51.)

Thornbro v. Railway Co.

In another part of the opinion it was said:

"The particulars in which those relations are regulated must have a real or substantial connection with the interstate commerce in which the carriers and their employees are engaged." (p. 49.)

This subject was considered by this court in *Barker v. Railway Co.*, 88 Kan. 767, 129 Pac. 1151, where some of the federal decisions referred to here with others are cited. The governing principle there declared is that:

"To constitute him (the employee) a person so employed his work at the time of the injury must have had a real and substantial connection with the interstate commerce in which such carrier was then engaged." (Syl. ¶ 4.)

Referring to the test applied in the Lamphere case, "Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce" (196 Fed. 340), an affirmative answer is as obvious here as there. Delay is a necessary incident of such a calamity, and delay in fact occurred. The regular movement of the train was interrupted to switch the defective car back upon the house track where it was left, and the promptings of common humanity required attention and care for the body, which were doubtless given. The train was deprived of a brakeman. All this tended to hinder and cripple interstate transportation. It can not be doubted that the work of the deceased had a real and substantial relation to interstate commerce. The rearrangement, as well as delay required in picking up a car by the way, necessarily affects the operation and movement of a train, and it can not be held that an employee upon such a train as this, while doing such work, is not engaged in interstate commerce, whatever may be the origin or destination of the particular car. To hold otherwise would be contrary to the manifest purpose of the act, which, as we have seen, has been

generally construed broadly and liberally, as it should be, in the interest of humanity and commerce alike. The language of Mr. Justice Van Devanter in closing the opinion in *Southern Ry. Co. v. United States,* 222 U. S. 20, 27, referring to the related subject of the federal safety appliance act is apt and appropriate here also.

The plaintiff contends that the coupler was defective and did not meet the requirements of the federal safety appliance acts. It appears that the original act of March 2, 1893 (27 U. S. Stat. at Large, ch. 196, p. 531), required railroads engaged in interstate commerce to equip trains, locomotives and cars used on its line in moving interstate traffic with designated appliances and made it unlawful for any such common carrier to haul, or permit to be hauled, or used on its line any car used in moving interstate traffic not equipped with automatic couplers capable of being coupled and uncoupled without the necessity of a man going between the ends of the cars. That act was amended by the act of March 2, 1903, which declared, among other things, that its provisions and requirements should "apply to all trains, locomotives, tenders, cars, and similar vehicles used *on any railroad engaged* in interstate commerce." (32 U. S. Stat. at Large, ch. 976, p. 943.)

Construing these acts, the federal supreme court, in *Southern Ry. Co. v. United States,* 222 U. S. 20, held that they were intended "to embrace all locomotives, cars and similar vehicles used on any railroad which is a highway of interstate commerce." (p. 26.) It was also held that the requirements of the statute were within the constitutional power of congress. The effect of the amended act was again stated in *Brinkmeier v. Mo. Pac. Ry. Co.,* 224 U. S. 268. It must be regarded as settled that the car in question should have been equipped with a coupler as specified in the statute.

The defendant complains of instructions relating to a rule of the company which provides that "Coupling apparatus must be examined and if out of order must not attempt to make a coupling." The court stated the rule and told the jury that if they found that Thornbro attempted to uncouple the cars by the use of the pin lifter lever on the Frisco car, and was unable to uncouple the same by the use of the lever, then, under the rule, it was his duty not to attempt to use the coupling appliances, and if he then went between the cars to uncouple them, the plaintiff could not recover; that if Thornbro willfully disobeyed the rule there could be no recovery, but:

"If, to the knowledge of said Thornbro, the rule in question was and had been disregarded with the knowledge of those superior in authority for such a length of time and to such an extent as to show a tacit or express consent by the defendant to such disregard of such rule, then the mere fact that Thornbro may have likewise disregarded the rule would not of itself prevent the plaintiff's recovery herein."

The defendant objects to the modification contained in the quotation on the ground only that there was no evidence to which it could apply. The abstract, however, shows competent evidence to which the instruction was pertinent.

The federal employer's liability act eliminates the defense of contributory negligence, as well as assumed risk, when the violation by a common carrier of any statute enacted for the safety of employees contributed to the injury or death.

The defendant also complains that the defense of contributory negligence, independent of any disregard of the rule, was not sufficiently stated in the instructions. This complaint, however, is predicated upon the contention that Thornbro was not engaged in interstate commerce when he was killed. It being determined that he was so engaged, and that the violation of

the safety appliance act contributed to his death, the defense of contributory negligence is not available.

Although not necessary to this decision, it may be remarked in passing that while the defendant insists that failure to observe the rule referred to was something above and beyond contributory negligence, in our opinion, it should not be so considered, but as contributory negligence only, and therefore is not available as a defense in this case under the statutes referred to. In any event the defendant has no good reason to complain of the instructions with respect to the rule.

The petition not only charged negligence with respect to the coupler, but also negligence in maintaining an unblocked guide rail whereby the brakeman's foot was caught while he was between the cars to make the coupling, a place into which he was compelled to go because the coupler, being defective as alleged, could not be used. At the close of the plaintiff's evidence the defendant asked that all evidence relating to the unblocked guide rail be withdrawn from the jury and alleges error in overruling this motion. The court apparently treated the evidence relating to the guide rail as descriptive of the place of the brakeman's fall and not as another ground of negligence, and carefully limited the plaintiff's right to recover upon two precedent facts to be found by the jury from the evidence, viz., that the coupler was defective as alleged, and second, that such defect was the proximate cause of the injury; and charged the jury that unless they so found the plaintiff could not recover. These propositions were stated and repeated in the instructions in clear and pertinent language.

The jury returned a special finding that the Frisco car was equipped with a defective coupler "which could not be uncoupled without the necessity of a man going between the ends of the car."

The question of proximate cause was one of fact for the jury. It was so held in the circuit court of appeals

in the second circuit, in *Donegan v. Baltimore & N. Y. Ry. Co.*, 165 Fed. 869, a case quite similar to this, where a brakeman stepped between moving cars to uncouple them because the automatic coupler was broken. In starting back his foot was caught in an unblocked frog, and he was thereby pulled down and injured. The court held upon the question of proximate cause:

"It is true that the direct instrumentality by which the plaintiff was injured was the frog. It was the immediate, but not necessarily the proximate cause. It was for the jury to determine whether the fail- ure of the defendant to equip the cars with the appli- ances required by the statute was, in view of all the facts and circumstances, a proximate cause of the acci- dent. Had the car been properly equipped there would have been no occasion for the plaintiff to go into a. place of danger. We can not say that the jury would not have been warranted in finding that the accident. would never have occurred had the car been equipped with the statutory appliances, and, consequently, that the failure to have such appliances was a proximate cause of the plaintiff's injuries." (p. 872.)

The circuit court had ruled in that case that the vio- lation of the safety appliance act was not a proximate cause of the accident, and the court of appeals ordered. a new trial for that error. Here, upon competent evi- dence and pertinent instructions, the jury found that. the defective appliance was the proximate cause, and the district court approved the finding. (For a dis- cussion of proximate cause, see *Gas Co. v. Dabney*, 79 Kan. 820, 101 Pac. 488.)

Some criticism is made of the amount of the damages allowed, $12,000. The amount is larger than is allowed. by our statute for death by wrongful act, but the fed- eral statute, which, as we have seen, governs the con- troversy, contains no such limitation. Mr. Thornbro was thirty-eight or thirty-nine years old, and was earn- ing from $75 to $85 per month. He left a wife and two

minor children. The amount is not so great as to show passion or prejudice. No sufficient reason appears for setting aside the verdict.

The judgment is affirmed.