# JULY TERM, 1914.

## PRESENT:

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,
HON. SILAS W. PORTER,          } JUSTICES.
HON. ALFRED W. BENSON,
HON. JUDSON S. WEST,

No. 18,463.

JULIA F. THORNBRO, as Administratrix, etc., *Appellee,*
v. THE KANSAS CITY, MEXICO & ORIENT RAILWAY
COMPANY, *Appellant.*

### OPINION ON REHEARING.

#### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Death of Brakeman—Rule as to Coupling Cars
—Waiver.* A rule of the defendant company provided that
"coupling apparatus must be examined and if out of order
must not attempt to make coupling. They [the employees]
are warned not to . . . go between cars in motion to
uncouple." The jury found that the rule was not enforced
but was disregarded by the defendant at the time of the in-
jury for which the action was brought. Upon an examina-
tion of the evidence it is held sufficient to support the findings
and the general verdict by which, upon the issues presented,
a waiver of the rule was also found. Questions concerning
the interpretation of the rule are referred to but not decided.

2. SAME—*Federal Employers' Liability Act — Interstate Com-
merce.* The question whether the brakeman was engaged in
interstate commerce at the time he was killed, decided in the
former opinion, is reconsidered, and that opinion is adhered to.

Appeal from Sumner district court; CARROLL L.
SWARTS, judge. Opinion on rehearing filed July 7,
1914. Reaffirmed. (For original opinion see 91 Kan.
684, 139 Pac. 410.)

*John A. Eaton, D. W. Eaton, H. J. Eaton,* all of Kansas City, Mo., *W. T. McBride,* of Wellington, and *Chester I. Long,* of Wichita, for the appellant.

*J. D. Houston,* and *C. H. Brooks,* both of Wichita, for th appellee.

The opinon of the court was delivered by

BENSON, J.: A rehearing was granted in this case upon the effect of the rule referred to in the former opinion. (*Thornbro v. Railway Co.,* 91 Kan. 684, 139 Pac. 410.) The scope of the rehearing was enlarged to a reconsideration of the question whether the deceased, Thornbro, was engaged in interstate commerce when injured.

Only that part of the rule alleged to have been violated was given in the former opinion. The entire rule is:

"Employees must not remove any of the appliances of an engine or cars for convenience in switching, endangering the safety of themselves or others; coupling apparatus must be examined and if out of order must not attempt to make coupling. They are warned not to get on the front or rear of an engine or the end of a car as it approaches them, or to go between cars in motion to uncouple, open, close or arrange knuckles of couplers or follow other dangerous practices."

The rule was set out in the answer, followed by an allegation:

"That disobeying and violating said rule the said J. N. Thornbro . . . carelessly and negligently went between the cars of said train while the same were in motion for the purpose of attempting to uncouple said cars, . . . and by reason of the violation on his part of said rule, the injuries which resulted in his death were caused and occasioned."

The plaintiff pleaded a waiver of the rule. Competent evidence having been offered tending to prove the waiver, the district court instructed the jury that:

"If the said Thornbro wilfully disobeyed the defendant's rule introduced in evidence, and thereby caused

his own death, plaintiff can not recover herein. But if, to the knowledge of said Thornbro, the rule in question was and had been disregarded with the knowledge of those superior in authority for such a length of time and to such an extent as to show a tacit or express consent by the defendant to such disregard of such rule, then the mere fact that Thornbro may have likewise disregarded the rule would not of itself prevent the plaintiff's recovery herein."

Upon this issue the jury in special findings found that the defendant had not enforced but had disregarded the rule prior to Thornbro's death. The contention of the defendant is that the evidence of a waiver of the rule concerns only that part of it which forbids employees to go between cars while in motion to do their work. It is asserted that:

"There is not a syllable of evidence that the rule was ever disregarded so far as it required employees to examine coupling apparatus and if the same was out of order not to attempt to make coupling."

It is argued that the rule covers different subjects, and that a waiver of the part prohibiting employees from going between cars does not impair the force of the part requiring an examination of the apparatus. Counsel say:

"The portion of the rule relative to coupling apparatus and its inspection remains as effective as ever."

It should be observed that although the defendant pleaded the rule in its entirety, the only violation alleged was that Thornbro went between the cars while in motion. There is no allegation of any failure to examine or inspect, if that should be considered separate and apart from the duty to refrain from going between cars. But these two parts of the rule are so interwoven in their obligations, as well as in the terms in which they are expressed, that it is difficult to wholly disassociate them. No good reason is apparent for going between the cars unless it should be found or believed that the coupling apparatus could

not otherwise be used. Proof that employees habitually went between the cars to couple and uncouple them to the knowledge of the company implied a waiver of the requirement of examination, as well as a waiver of the prohibition, if as a practical matter there can be any substantial separation between the two. It is unnecessary, however, to discuss this distinction further, either with respect to the language of the rule or the pleading upon this issue, for the evidence tended to prove a waiver of the rule, not only in respect to going between the cars, but in respect to the examination of the coupling also. A switchman who had been in the employ of the defendant a considerable time testified that he knew of the custom of brakemen on that road. Asked to state what that custom was, he said:

"Well, where your cut-off levers are disconnected or broken or bent, it is customary that a man will jump in between them and get the opposite lever.

"If there is no opposite lever the cars are not to be uncoupled. When the lever failed to work, it was the custom during the time I worked for the Orient for brakemen to go in between slow-moving cars and use the hand to pull the pin or open the knuckle in coupling or uncoupling. I have seen this happen on the Orient road since I have been employed by the Frisco. The Frisco and Orient tracks at Wichita are consolidated into one. The Orient uses the Frisco yards. It is customary to go between slow-moving cars to uncouple them when they could not be easily uncoupled by use of the pin lever as it was easier to do this than to crawl under them or over to the other side. I have gone between cars under such circumstances in the presence of my superior officials in the yards at Wichita, Kansas, in 1909, while I was working for the Orient. I have seen brakemen and conductors do the same and I was never reprimanded, nor did I know of such superior officials reprimanding such brakemen or conductors for such action."

There was other testimony of the same import. It appears that the custom was to enter between the cars after ascertaining that the lever would not work.

Whatever examination the rule requires must necessarily be done hurriedly as an incident of the principal duty to make the coupling. The act of going between the cars directly follows the examination. These acts are not divorced in the testimony, nor in practical operation. It must also be remembered that the jury found that the rule and not a particular part of it had been waived.

It is further contended that no actionable negligence on the part of the defendant is shown, because the only negligence alleged or found is the use of a car with a defective coupler, and the only person having knowledge of the defect and making use of the defective appliance was Thornbro himself. It is insisted that he was made the company's inspector of that car by the rule referred to, and that there was no negligence of the company except his own. In this situation the defendant invokes the principle that when the only negligence shown is that of the employee he can not recover, although the company might be liable therefor to third persons. Many decisions are referred to in support of this proposition, but it is not necessary to cite them here. The car in question was delivered by another company to the defendant upon its house track at Custer the day preceding the death of Thornbro. The evidence does not show whether any employee or agent of the defendant handled or performed any duty respecting it before it was switched to the main track the next day to be placed in the train. While it is shown that Thornbro turned the switch for picking up this car, there is no evidence that he handled it until he made the fatal attempt to uncouple it after it was upon the main track. The following findings, among others, were returned by the jury:

"15. Was the Rock Island box car coupled to the car of chats before the train on which Thornbro was brakeman moved it? Answer. Yes.

"16. If you answer the last question in the affirmative, then, who coupled the Rock Island box car to the car of chats? Answer. No evidence.

"17. Were the Rock Island box car and the car of chats moved out onto the main line at Custer City for the purpose of putting the car of chats into the train upon which Thornbro was brakeman? Answer. Yes.

"18. Did any employee of the defendant company go about the car of chats before it was moved out on the main line to be put into the train? If so, what employee or employees? Answer. No evidence."

Custer is a small station where connection is made with the tracks of the St. Louis & San Francisco Railway Company. In fact, the track used by the defendant for a short distance east and west of that place, over which the defendant operates its trains in state and interstate traffic, belongs to that company. No inspector is employed at that station. The defendant states that one object of the rule is to provide for an inspection in just such cases, that this is a reasonable requirement, and that in no other manner could it protect itself from fine, and its employees from injury. It will be seen that this construction of the rule makes every brakeman an inspector. It is doubtful whether such a broad meaning should be given to the expression "coupling apparatus must be examined, and if out of order must not attempt to make coupling." This language must be interpreted in the light of the general duties of employees, the particular work in which they may be engaged at the time, the opportunities afforded for examination, and the sense in which the language should be understood by men engaged in such work. It is obvious that the contemplated examination intended by the rule is not an inspection, as that term is ordinarily used with respect to the sufficiency of cars and appliances, although a failure to perform the duty required might, in a proper case, be contributory negligence where that defense is available. Like other similar rules, however, it may be waived, as it appears to have been in this instance, as shown not only by the findings referred to but by the general verdict, the question of waiver being one of the issues submitted to the jury.

The use of the car in its defective condition was in violation of the federal safety appliance act, which imposes a certain obligation defined by the statute and affirmed by federal decisions. (*Delk v. St. Louis & San Francisco R. R.,* 220 U. S. 580; *C., B. & Q. Ry. v. United States,* 220 U. S. 559, 576; *Chicago Junction Ry. Co. v. King,* 169 Fed. 372.)

This obligation of the statute is made more emphatic by section 5 of the employers' liability act of 1908, which provides:

"That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void." (Part 1, 35 U. S. Stat. at Large, p. 65, ch. 149, § 5.)

We are now to reconsider the remaining important question whether Thornbro was engaged in interstate commerce when killed. Among the cases cited in the former opinion in support of the conclusion that he was so engaged is *Behrens v. Illinois Cent. R. Co.,* 192 Fed. 581. That decision has been reversed since our opinion was written. (*Ill. Cent. R. R. v. Behrens,* 233 U. S. 473, 34 Sup. Ct. Rep. 646,) The decision of the supreme court in that case, however, does not necessarily determine the question arising upon the facts of this case. Behrens was working with a crew on a trip hauling intrastate freight exclusively from one part of the city to another, and it was said that the fact that he was expected upon the completion of that task to engage in another, which would have been a part of interstate commerce was immaterial. It will be seen that the case is easily distinguished from the one presented here upon facts which are stated in the former opinion. In the Behrens case the court repeats the language used in *Pedersen v. Del., Lack. & West. R. R.,* 229 U. S. 146, that "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?" (p. 152.) Again it was said at the close of the opinion in the Behrens case:

"The true test is the nature of the work being done at the time of the injury." (p. 648.) It was said in the Pedersen case that among the questions which naturally arise in this connection are these:

"Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier?" (*Pedersen v. Del., Lack. & West. R. R.*, 229 U. S. 146, 151.)

Applying any or all of these tests to the case now under consideration we are convinced that Thornbro was engaged in interstate commerce when killed. He was doing work which was a necessary part of that commerce in which the carrier was engaged. These conclusions are confirmed by cases cited in the former opinion and by other recent federal decisions. (*St. L. & San Francisco Ry. v. Seale*, 229 U. S. 156; *Wheeling Terminal Ry. Co. v. Russell*, 209 Fed. 795; *Eng. v. Southern Pac. Co.*, 210 Fed. 92; *Nor. Car. R. R. Co. v. Zachary*, 232 U. S. 248, 34 Sup. Ct. Rep. 305.)

The views expressed in the former opinion are adhered to, and the judgment is affirmed.