Benson v. Railway Co.

No. 21,883.

C. H. BENSON, *Appellee,* v. B. F. BUSH, as Receiver of THE
MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COMPENSATION ACT—*Injuries—Agent Lighting Fire with Kerosene.*
   The plaintiff, as station agent of the defendant, was not, while at-
   tempting to start a fire in the depot stove, engaged in interstate com-
   merce.

2. SAME—*Accident Incident to Employment.* His attempt to start a fire
   by the use of kerosene, which he supposed was signal oil, did not
   thereby add to his employment any peril outside thereof.

3. SAME. The injury arose out of and in the course of his employment
   within the meaning of the workmen's compensation act.

Appeal from Sedgwick district court, division No. 2; THORN-
TON W. SARGENT, judge. Opinion filed February 8, 1919. Af-
firmed.

*W. P. Waggener, Walter E. Brown, G. L. DeLacey,* all of
Atchison, and *O. H. Bentley,* of Wichita, for the appellant.

*John W. Adams,* and *S. S. Hawks,* both of Wichita, for the
appellee.

The opinion of the court was delivered by

WEST, J.: The defendant appeals from a judgment re-
covered by the plaintiff for injuries caused by burns received in
attempting to start a fire in the depot where the plaintiff was
employed. The action was under the workmen's compensa-
tion act.

At the station of Ray, in Pawnee county, the plaintiff began
work as relief agent, and in trying to start a fire with what he
supposed was signal oil, but which was afterwards found to be
kerosene, he was burned. The answer alleged that, if the
plaintiff was injured, it was not by reason of any accident
arising out of and in the course of his employment, but was due
to the explosion of a can of kerosene which he himself poured
upon the live coals, and that he was injured because of the new
and added peril caused thereby, to which he carelessly exposed
himself, and that the act was outside of his employment. It

was further alleged that the injury occurred while the plaintiff was employed by the defendant in interstate commerce, and that his remedy, if any, was under the federal employers' liability act.

The court instructed the jury that the injury was an accident that occurred in the course of plaintiff's employment, but that it remained for them to determine whether it arose out of the employment, which they were told meant that the accident was in some sense due to the employment and resulted from an accident or risk reasonably incident to that employment, and a risk which might have been contemplated by a reasonable person entering the employment, as incidental to it; that if the injury was due to an act of the plaintiff's which added a new or additional risk to his employment he could not recover. The jury were also instructed that the question of whether the plaintiff and defendant were engaged in interstate commerce, as a defense, was not before them for their consideration.

They answered special questions to the effect that the plaintiff was not injured by pouring kerosene on the fire, or on live coals; that the explosion was caused by fire from a lighted match coming in contact with explosive matter; that the liquid in the can, which the plaintiff poured in the stove, was kerosene; that a former agent furnished the kerosene; that the defendant had a rule forbidding its use in starting fires in stations, which rule was in the station at Ray, but that the plaintiff did not know of its existence before his injury; and that the defendant checked to the plaintiff as agent the cans in the depot, the contents of one of which was afterwards used by him in attempting to light the fire.

The defendant argues that as Ray was a station on an interstate line of railroad, where the duty of the agent was to sell tickets to points in and out of the state and to handle state and interstate freight, the agent was engaged in interstate commerce; that his injury did not arise out of and in the course of his employment, but that it arose from the new and added peril caused by the method he himself chose to do his work; that when the defendant had provided kerosene for lights and had made a rule prohibiting its use in starting fires, and the agent, nevertheless, used it for that purpose, he thereby added a new

peril to his work, which cannot be said to have arisen out of his employment.

In order for the plaintiff to come under the employers' liability act it must appear that the injury was incurred while he himself was employed in interstate commerce; and that his work at the time had a real and substantial connection with interstate commerce. (*Barker v. Railway Co.*, 88 Kan. 767, 129 Pac. 1151; *Thornbro v. Railway Co.*, 91 Kan. 684, 139 Pac. 410; *Thornbro v. Railway Co.*, 92 Kan. 681, 142 Pac. 250; *Bumstead v. Railway Co.*, 99 Kan. 589, 162 Pac. 347, and cases cited.)

It has twice been said that the test is:

"Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" (*Shanks v. Del. Lack. & West. R. R.*, 239 U. S. 556; *Chi. Burlington & Q. R. R. v. Harrington*, 241 U. S. 177.)

The plaintiff was checked in on November 16, 1916. The next morning he started to build a fire, and the accident occurred. He testified that he did not know whether he could sell a ticket to a point outside the state or not; that he did not know that he had such tickets to be filled out; and that if a person had come to buy an interstate ticket, he would have had to get information. The mere fact that the station was on an interstate road did not render plaintiff at the time a person engaged in interstate commerce. He had been working the evening before on some statements of state and interstate business comparative to the business of the year before, but the following morning, when starting the fire, he was not thus engaged. *Erie R. R. Co. v. Winfield*, 244 U. S. 170, is cited as authority for holding the plaintiff to have been engaged in interstate commerce. In that case Justice Vandevanter, speaking for the court, said:

"In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. . . . Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both." (p. 173.)

There the employee had actually been doing state and inter-
state work, while here the only work the plaintiff had done on
the day in question was state work.    True, his employment or
the scope of duty which he might be called upon to do included
both, but he had not, on the day in question, done any interstate
work, and he was doing none when injured, nor was he going to
or returning from duties of both kinds.

In *Chi. Burlington & Q. R. R. v. Harrington*, 241 U. S. 177,
the employee was removing coal from storage tracks to coal
chutes, which coal had been previously brought from another
state and had been on hand a week or more.    It was said not
to be important whether Harrington had been or contemplated
being engaged in interstate work.    He was not so engaged at
the time of the injury, and it was held that he could not recover.
This decision was rendered in 1916.    The Winfield case was
decided in 1917.

*Southern Ry. Co. v. Pitchford*, 253 Fed. 736, was decided by
the fourth circuit court of appeals in 1918.    Pitchford was at
work in the defendant's yards, to which came cars, both state
and interstate, which were there kept until needed.    His duty
was to clean and ice the cars and keep the yards free from
paper and other refuse.    Every morning a delivery of several
thousand pounds of ice was made at the yards, whereupon the
employee, with others, would load a push car and from it take
the ice and put in the cars as needed.    On the day of the injury
he had finished cleaning a car and had begun cleaning the yard
when he heard a call that the ice had come.    He went to the
push car to aid in putting it on the track; and while waiting
by the belt-line track for other employees to come, he turned
to look at an engine approaching on the main track, and was
struck by a switch engine running rapidly on the belt-line track.
The cars which he would in due course have iced first were
interstate cars.    It was held that at the time of the injury he
was not engaged in interstate commerce or in work so closely
connected therewith as to be practically a part of it.    The case
was said to be governed by the same rule as the Harrington
case.    This is the latest federal decision we have found, and
considering the analogy of the case before us, and the dis-
similarity of the Winfield case, it is held that the plaintiff was
not within the federal employers' liability act.

The most natural thing for a station agent to do is to make a fire in the stove when the weather is cold, and, notwithstanding the dangers and prohibitions, everybody knows that people will start fires with coal oil. It appeared in this case that the agents in that locality generally used kerosene in starting fires. The plaintiff testified:

"It was the custom of the agents to do that. All that I have ever known. I have known a majority of them along that special division."

The very fact that the defendant had a rule against using kerosene to start fires indicates a knowledge that such warning was needed, which is another way of saying that it indicated consciousness of the agents' custom to use coal oil for kindling.

The trial court correctly instructed that the injury occurred in the course of the employment, and the jury were warranted in finding that it arose out of such employment.

In *Stewart v. Kansas City*, 102 Kan. 307, 171 Pac. 913, an employee was injured by having mortar playfully or wantonly thrown into his eye by a fellow workman, and this was held to be an injury arising out of and in the course of his employment. (See, also, *White v. Stock Yards Co.*, ante, p. 90.)

In Workman's Compensation Acts, a Corpus Juris Treatise, by Donald J. Kiser, the rule is thus stated:

"A peril which arises from the negligent or reckless manner in which an employee does the work which he is employed to do may, in many cases, be held to be a risk incidental to the employment; and the same is true where he performs an authorized act in a forbidden manner, a distinction being taken in this regard from cases in which the act is altogether outside of, and unconnected with, the employment." (p. 75.)

In support of the text that a new and added peril to which the employee has needlessly exposed himself is not within the act, the author cites the case of a messenger boy jumping on a moving street car; of a miner riding in an empty tub contrary to orders; and of a workman walking across a railway contrary to orders, instead of crossing by bridge.

The annotated case of *Lancashire & Yorkshire Ry. v. Highley*, 15 N. C. C. A. 210, decided by Lords Finlay, Haldane, Dunedin, Atkinson and Sumner in March, 1917, involved the question whether the death of a workman caused by attempting to go between the trucks of a "goods train" arose out of his employment. It was held that it did not so arise. The county court judge held the employer not liable. The court

of appeal reversed this ruling. When the case reached the court of last resort and was argued, "Their Lordships took time to consider their judgment."

Viscount Haldane in his opinion said that for the injury to be one arising out of and in the course of the employment it must be shown that two conditions had been satisfied:

"The injury by accident must have occurred as something which would not have occurred but for the circumstance of the employment and as having been something due to it—the employment—and it must further have occurred during its currency." (p. 244.)

Lord Sumner gave as one test:

"Was it part of the injured person's employment to hazard, to suffer, or to do that which caused his injury? If yea, the accident arose out of his employment. If nay, it did not, because, what it was not part of the employment to hazard, to suffer, or to do, cannot well be the cause of an accident arising out of the employment." (p. 287.)

The case was said to be—

"A case of an accident arising not out of, but outside of the employment, since at the time of his death the workman was in no sense doing that which was part of or fell within his employment, whether he was or was not acting with care therein, but was for his own purpose—namely, the convenience of the moment—thoughtlessly pursuing a course which fell outside of his employment." (p. 292.)

It is quite clear from all the five opinions that the case was not regarded or treated as one of a merely negligent manner of doing some act clearly within the line of employment, but as one involving a voluntary and needless choice of a dangerous route of travel when safe ones were available, thereby momentarily taking the workman outside of the line of his employment.

Here the agent was rightfully and properly attempting to start a fire, but carelessly used the wrong kind of kindling. This was not a conscious, voluntary choice between a safe and a dangerous way to do his duty—but a careless use of a combustible, which careless use endangered his life and seriously injured him, but just such a careless use as was frequently made of kerosene by the station agents of the defendant and such a use as might be likely to result from the employment.

While the facts place the case before us very near the border line, there is sufficient in the record to justify the conclusions reached by the trial court.

The judgment is affirmed.