263 P.2d 710

**SHAW v. SIKES et al.**

No. 7971.

Supreme Court of Idaho.

Nov. 25, 1953.

E. B. Smith and Wm. M. Smith, Boise, for respondent.

Everett M. Sweeley, Twin Falls, for appellants.

GIVENS, Justice.

F. A. Sikes and J. L. Personius, partners, had a lease on the Five Points Mine in

Camas County, owned by the Golden Arrow Mining Company, Sikes being the principal stockholder therein and president thereof.

During July 1950, operating under their lease, they were installing a mill owned by Personius, rehabilitating an old ore chute, rebuilding and extending a road to and on the property, necessitating some side-hill work and cribbing.

Claimant was employed, as Sikes testified, thus:

"Q. And what work did you employ him to do? A. Well, just common labor, anything there was to do, and he told me that he was also a cat driver and I have a trailer that I was going to haul ore down from the mine to the dump.

"Q. What were you doing at that time, what work were you doing? A. Building a road.

*   *   *   *   *   *

"Q. And as an outcome of that conversation you hired him as a common laborer? A. That is right.

*   *   *   *   *   *

"Q. And Mr. Shaw was employed by yourself and Mr. Personius in the work that he did? A. That is correct."

Claimant thus describes the incident on the 24th resulting in an injury to his back, for which he sought and was granted compensation by order of the Industrial Accident Board:

"A. We had removed a chute and there had been at one time some old sills at the bottom of this chute and one of those was in the way and we decided to move it and put it down for a cribbing to hold the dirt, and I started to move this log or sill and in some way or another I slipped or twisted lifting on this log which caused my injury.

*   *   *   *   *   *

"Q. On whose instructions did you move that log, the log that you mentioned? A. I don't hardly know how to answer that question, whether it would be,—I think it would be in the run of the day's work.

"Q. You just saw something that needed doing and went ahead and did it? A. It was in the road and we needed to have a road there,—what would you have done?

"Q. What I would have done isn't important. A. It was something that had to be done and I done it.

"Q. You went ahead and did it without any specific instructions? A. The man says put the road in, and the log was there, what are you going to do, go over it?

"Q. That was just part of putting in the road? A. It was just a part of putting in the road.

"Q. You didn't have any specific instructions from anyone and you did what you could? A. We had orders to put the road in and I went ahead and done the best I could and what was in the road had to come out. If there was a tree in the road, it had to come out.

"Q. Was the cat there at that time? A. I think so, yes.

"Q. You worked two days, the 25th and 26th, after you say you were hurt? A. That is right. I didn't hurt myself any those last two days."

He was substantially corroborated by his fellow workman, Panting, thus:

"A. We run into, apparently I suppose an old ore bin,—I took it to be an old ore bin, where we dug out this road. There was some rotten logs and some nice looking logs,—that's why we knew it was an old ore bin.

"Q. That was the following day, was it? A. I wouldn't say what day that was, but we must have been working on that on that day, I wouldn't say just what day because we run into stumps before we got into the logs and the ore bin.

"Q. Will you state whether or not you ran into any unusual object in digging the road itself, in the road bed? A. Well, yes, we ran into stumps and trees and also a buried log and stuff like that and parts of an old plank.

"Q. How big was this buried log you and Mr. Shaw ran into in digging the road? A. Sixteen inches, what was left of it. You understand the outside of the log was off. It was rotted on the outside and left the inside solid.

"Q. How long was the log, to your best recollection? A. Possibly ten or twelve feet.

"Q. Will you state whether or not you and Mr. Shaw removed the log from where it was buried in the portion of roadway you were constructing? A. Mr. Shaw removed the log. If I may explain this to you,—he was working here and I was working down next to the mill cribbing up so as to level it up. He was working the stuff down to me, and he removed the log and got it part way down and both of us took it on down and I cut it in two to get it where I could handle it.

\*    \*    \*    \*    \*    \*

"A. Well I don't know as I could quote the words, but he straightened up, he was straddling the log, and he let a sigh out of him and said something about he kinked his back, and that is when I helped him with the log. I said, 'that's east to do,' and that is when I stepped up and helped him with the log."

428

The Board found: " * * * that claimant July 24, 1950, received an accidental personal injury arising out of and in the course of his employment which he then had with the defendants, F. A. Sikes and J. L. Personius, employers, * * *" and concluded that as a ruling of law—"Claimant is entitled to an award or awards against the defendants, * * *", making the appropriate award for the extent of his proved disability.

Appellants urge the Board erred in finding an accidental injury, because— " * * * claimant of his own motion, without direction by or in the presence of his employers, elected to and did subject his own physical structure to a strain of such magnitude that an injury was certain to and did result, * * *" and that he " * * * was employed to drive and use the tractor supplied by the employers to handle and move heavy objects, and that when he substituted his own physical strength for the mechanical means * * * he was not doing what he was employed to do and that the injury he sustained arose * * * from a risk which claimant voluntarily assumed and which was not within the terms of his employment."

In essence these assignments of error urge contributory negligence and assumption of risk as faults on the part of claimant.

Sikes' testimony, quoted above, shows claimant was not hired exclusively to drive the "cat."

The work claimant and Panting were doing on the roadway, putting in the cribbing and working on the ore chute, was the only work being done at that time by them for their employers. Sikes knew they were doing this work and that is what he employed them to do.

Clearly claimant was attempting to do something in furtherance of his employers' interests, on the premises of employers, directly connected with the work he undoubtedly was hired to do and was doing, namely, rebuilding and extending the road with cribbing to hold the road bed and rehabilitating the chute, and the completion of what he attempted alone—moving the log—inured to the benefit of his employers.

Section 72–102, Idaho Code, expressly authorizes compensation regardless of fault and such has been the consistent holding here and elsewhere. The following cases construing such provision require affirmance of the award, even though claimant's attempt to lift the log was unwise, foolish or foolhardy, it was in the course of his employment and arose out of making the road, cribbing and chute: In re Stewart, 49 Idaho 557, 290 P. 209; Shoemaker v. Snow Crop Marketers Division, Idaho, 258 P.2d 760; Benson v. Bush, 104 Kan. 198, 178 P. 747, 10 A.L.R. 1165 at page 1168; Associated Indemnity Corp. v. Industrial Acc. Comm., 18 Cal.2d 40, 112 P. 2d 615; Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 5 N.W.2d 619.

Both the facts and the law fully support the findings and conclusions of the Board. The order awarding compensation is, therefore, affirmed. Costs to claimant.

PORTER, C. J., and TAYLOR, THOMAS, and KEETON, JJ., concur.