RUTH GRIFFIN, RESPONDENT, v. ANDERSON MOTOR SERVICE CO. AND GREAT AMERICAN INDEMNITY CO., APPELLANTS.—59 S. W. (2d) 805.

Kansas City Court of Appeals. April 3, 1933.

856

[redacted]

*Robert F. McKinstry* for respondent.

*Morrison, Nugent, Wylder & Berger* and *Douglas Stripp* for appellants.

SHAIN, P. J.—This is an action under the Missouri Workmen's Compensation Act.

The record discloses, that on and prior to March 5, 1932, Fred Griffin, deceased, was in the employ of the appellant, Anderson Motor Service Company, a corporation, operating and doing business at the northeast corner of Missouri avenue and Oak street, Kansas City, Missouri.

The evidence discloses, that one of the duties of the deceased was to attend to changing oil and greasing the trucks of his employer. The evidence further discloses, that next door and across the alley, to the west from the Anderson Company's place of business, was a separate building in which George T. Schaeffer operated what is known as the M. & S. Truck Repairing Company. It is disclosed, that Schaeffer, in this separate building, did the repairing of the Anderson Company's trucks and, under an arrangement between the parties, Schaeffer heated his building by means of a home-made oil burner, and the drainage oil obtained from the Anderson Company's trucks was used for fuel. It is shown that the oil was drained from the trucks, both in the Anderson Company's place and in the Schaeffer place of business. It is shown by the evidence, that the deceased, in the performance of his duty, performed labor in the Anderson Company building or in the Schaeffer building, as occasion dictated. It appears from the evidence, that the oil was drained in buckets and was frequently carried to the Schaeffer building, there to be used for fuel. On the morning of March 5, 1932, the deceased went over

to the Schaeffer place for a bucket, used in draining oil from a truck.
George T. Schaeffer was, at that time, in his place of business and
had just started a fire in the furnace by the use of kindling, as he
says was the custom. The deceased picked up a bucket that he desired.
The bucket appeared to contain a quantity of dark-looking oil. It
appears, that Schaeffer had been using this bucket in washing auto
parts and it contained gasoline, and he testifies; that the contents
were real dark and thick; that he, deceased, "didn't know that I
had changed and put gasoline in it—and the fire wasn't burning very
good—he picked it up, opened the door, and threw it in there to
empty it, I guess—next thing, I heard a scream—he looked like a
human torch when I saw him next."

From the accident thus occurring, the deceased employee received
his injuries.

The employee, Fred Griffin, on April 29, 1932, filed his claim for
compensation before the Workmen's Compensation Board, testimony
was taken in the case before he died.

On June 15th, the employee died and on June 21, 1932, this claim
for compensation was filed by Mrs. Ruth Griffin, wife of the deceased,
respondent herein.

The Missouri Workmen's Compensation Commission awarded com-
pensation totaling $4,889.32. On appeal to the circuit court, the
award was affirmed and this case is before us on appeal from the
circuit court.

The appellants make but one (1) assignment of error, to-wit:

"The Circuit Court of Jackson County erred in affirming the award
of the Missouri Workmen's Compensation Commission because there
was not sufficient competent evidence in the record to warrant the
making of the award of compensation in this case."

The sole contention of the appellants is: that there is no evidence
in the case, that the deceased was injured by accident arising out of
the course of his employment.

In support of the above contention, the appellants cite sections
3301 and 3305, Revised Statutes of Missouri 1929, together with sev-
eral Missouri decisions and fifty-three decisions from foreign juris-
dictions, without comment. The appellants in their presentation, by
way of argument, have seen fit to embrace some excerpts from some
of these decisions, but in the main have indirectly complimented this
court with the presumption, that we will peruse the substantive law
from the presentations *arguendo* and otherwise as found in these
authorities and glean therefrom the matter particularly directed to
the subject in hand. This we have done to the best of our ability
and have concluded, as has the appellant, that the sum and sub-
stance of all of these authorities are as is stated by the appellants
to-wit:

"An injury arises 'out of' the employment when there is a causal

connection between the conditions under which the work is required to be performed and the resulting injury; and that an·injury to an employee arises 'in course of' his employment, at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto." [Wahlig v. Krenning-Schlapp Grocer Company et al., 29 S. W. 128, 130, 325 Mo. 677.]

*Appropo* to the above and as a condition precedent to our inquiry into the facts of this case, we quote section 3374 of the Workmen's Compensation Law, as follows:

"Sec. 3374. Law to be liberally construed.—All of the provisions of this chapter shall be liberally construed with a view to the public welfare and a substantial compliance therewith shall be sufficient to give effect to rules, regulations, requirements, awards, orders or decisions of the commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto."

As a further reminder of the limitation of power vested in us in reviewing the case, we quote from State ex rel. Buttinger v. Haid et al., 51 S. W. (2d) l. c. 1010, as follows:

"Sec. 3342 (Mo. St. Ann. 3342), provides the duty of the circuit court, as follows: 'Upon appeal no additional evidence shall be heard and in the absence of fraud the findings of fact made by the commission within its powers shall be conclusive and binding.'"

Section 3305 of the Workmen's Compensation Act defines the word accident, as follows:

"The word accident as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, *with or without human fault* and producing at the time objective symptoms of an injury." (Italics ours.)

Paragraph (c) of section 3305 is as follows, to-wit:

"(c) Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such services."

It is evident from the evidence, that the deceased went to the building of Schaeffer, where he received his injury, for a purpose connected with his business as an employee. It appears that it was the duty of the deceased to get the bucket used to catch the oil drained from the trucks, and incident thereto, to dispose of its contents for re-use. We must therefore conclude, that the accident occurred within the period of employment and at a place where the deceased was reasonably situated while fulfilling his duties, and that he was doing

something, in getting the bucket and emptying same, that was incidental to his duties. There is no evidence, from which it can be inferred, that the deceased had ever been instructed by his employer as to the method of disposing of the oil drained from the trucks or that deceased was violating any rule or command of his employer touching said matter. There is nothing in the evidence from which it can be inferred, that the deceased was not about his master's business or that he was acting under the orders of anyone other than his employer, at the time he was injured. We, therefore, conclude that the case at bar has distinguishing features from the elements upon which compensation was denied in Cassidy et al. v. Eternit, Inc., 326 Mo. 342, 32 S. W. (2d) 75; Probst v. St. Louis Basket & Box Co., 52 S. W. (2d) 501, and Miliato v. Jack Rabbit Candy Company, 54 S. W. (2d) 779.

The appellant also cites, as in point in this case, Kasper v. Liberty Foundry Co., 54 S. W. (2d) 1003. The case before us is distinguished from the above case in that the evidence in this case does not disclose that the employer had made any rules or given any direction as to how the accumulated drain oil was to be removed from the buckets. We glean from the evidence, that neither the employer or the employee had in contemplation that gasoline would be deposited in these buckets. The accident in this case was, as is most often the case, due to the unexpected. In the Kasper v. Foundry case, above, the employee was doing something in violation to known rules, which clearly distinguishes that case from this.

The appellant cites many cases wherein the employee had left his line of duty and was voluntarily doing something outside the scope of his employment. The thought is presented that the language used by the deceased when he emptied the contents of the bucket into the fire,—"Well, Shorty, I will kindle up your fire a little," is evidence of the fact that the deceased had left his line of duty and was voluntarily doing something outside the scope of his authority.

In order to so construe the language of the deceased, it would have to be concluded that the sole purpose of the deceased, in emptying the bucket, was to kindle a fire for Shorty. The injured party is entitled to the most favorable inference that can be drawn from the evidence. We conclude, that the triers of the fact, in this case, were justified in drawing the inference that the deceased's object was to empty the oil from the bucket and that the unexpected result from his manner of doing so was incident to the scope of his employment.

In Wahlig v. Krenning-Schlapp Grocer Co. et al., 29 S. W. (2d) 128, this language is found:

"As a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto."

The appellants present that the act of the deceased was unreasonable.

The question arises as to what is meant by the expression, "While he is reasonably fulfilling the duties of his employment." There are some expressions in cases cited from sister states, wherein similar acts to ours are being discussed, wherein a bar to recovery seems to have been predicated upon the unreasonableness of the act causing the injury. Such a case cited is an Illinois case, Herald Printing & Stationery Co. v. Industrial Commission, 177 N. E. 701.

We, however, find no expression by the courts of Missouri, wherein the unreasonableness of the act of the employee has been considered as a bar to compensation. We conclude, from the whole context of the paragraph wherein the expression occurs, that the expression, "Reasonably fulfilling the duties of his employment," has reference to the fact, as to whether the employee, in what he is doing, is reasonably within the scope of employment and has no reference to the reasonableness or unreasonableness of the manner of performance. The paragraph in the Wahlig case above, containing the above expression, has a statement in the disjunctive, "Or in doing something incidental thereto." This last expression lends strength to the above interpretation that the expression is as to whether or not the employee, at the time and place, can be reasonably inferred to be about his master's business.

The courts of Missouri have construed the Workmen's Compensation Act as eliminating all elements of negligence, and many recoveries are shown to have been upheld wherein the acts of the employee causing the injury have been very unreasonable acts amounting to gross negligence. The doctrine of the courts of other states, that recovery is precluded by an unnecessarily dangerous way, is not in point in Missouri.

In determining the issues involved in this case, we must have in mind that there are several lines of cases, wherein the language of judicial opinion must be interpreted as directed and as applicable to the subject in hand.

In one class of cases, as in this, the "causal connection" is not most seriously involved. In some cases the issue hinges upon the question as to whether or not the employee is "engaged in his master's business." In other cases, the issue is as to whether or not the "period of employment" is involved, and in others, the place of the accident is particularly under consideration.

In the cases cited by the appellant, sometimes one of these points is the nucleus around which the discussion rests and sometimes another, and in some, two or more of these questions are involved. In the case at bar, we conclude that the claimant's position on every other point in issue is undebatable ground except as to the question

of, "causal connection between the conditions under which the work is required to be performed and the resulting injury."

The commission and the trial court have found, as a matter of fact, that there is a "causal connection." We are bound by this finding, unless from a study of all the facts and circumstances in evidence it appears that there is no evidence from which the fact as found can be inferred.

In the case of Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 1. c. 684, the court, having under consideration, "In course of employment," uses this language: "It is also the law that where an employee charged with the performance of a duty is found injured at a place where his duty may have required him to be, there is a natural presumption that he was injured *in the course of, and in consequence of the employment.*" (Italics ours.)

In the above case, the employee's duty required him to travel in all parts of the city. His injury occurred at a street crossing. There was no direct evidence as to what the employee was doing at the street crossing, still compensation award was upheld, based upon the presumption above stated.

We recognize the principle that, "where evidence steps in presumption flies out of the window." However, the case at bar, as the deceased was at the place and within the period of his employment he is entitled to the presumption that his injury was in consequence of the employment, unless there is evidence to the contrary.

The exact significance of the word, "causal," is an important factor to the conclusions to be reached in this case. Much academic discussion might be indulged in touching the limitation of the meaning of this term in relation to the Workmen's Compensation Act.

In 11 Corpus Juris, at page 36, the word *cause*, as a noun, is defined as meaning:

Philosophically speaking, the sum of all the antecedents of any event constitutes its cause. Ordinarily, however, each separate antecedent of an event is considered as a cause for such event, provided, however, that the event could not have happened except for such antecedent; in this case, that which supplies a motive, decides action. or constitutes the reason for anything done; that which produces or effects a result, or from which brings proceeds, and without which would not exist; that which produces an effect, or which brings a thing to be; that condition which determines the final result; that on which a thing under given circumstances follows."

We find no decisions in the courts of Missouri, wherein our courts have undertaken to give to the word, "causal," a restricted meaning in the consideration of the Workmen's Compensation cases.

The Workmen's Compensation Act is a departure from many formerly well established precedents, touching the relation of master and servant. The master and servant have each surrendered substantial rights that they had under the pre-existing law and our courts are kept busy in an attempt to define the respective rights and liabilities under the new status created by the act. There are so many elements entering into accidental cause, that nearly every case presents new phases and new cases are accumulating in proportion almost to that old problem in arithmetic—progression of one cent for the first nail in the shoeing of a horse and doubling on each succeeding nail.

The courts in compensation cases under the act, due to many ways and hows that an accident may happen, are of necessity compelled to give heed to the old adage, "that every tub stands on its own bottom." In our research of the many cases cited in this case, we find no two cases parallel in all points. There are many principles of law concerning compensation cases, that of course are well defined and established, however, we conclude that no case as yet has, and we fear that for a long time yet, no single case will define and establish a rule that will apply generally to the question of, "a causal connection between conditions under which the work is required to be performed and the resulting injury." We conclude, however, if the work is in line of employment, that gross negligence in manner does not defeat causal connection.

In consideration of all antecedents shown in evidence leading up to and culminating in the accident causing the injury in this case, we conclude, that as the deceased was injured within the period of his employment and was doing something that may be considered as incidental to his employment and at a place where his services required his presence, there are sufficient facts and circumstances in evidence to support the presumption that the injury was in consequence of the employment, and, that therefore there is substantial evidence upholding the finding of fact that there was a causal connection between the conditions under which the work was required to be done and the resulting injury.

So finding, the judgment of the lower court is affirmed. All concur.