**EMPLOYERS' LIABILITY ASSUR. CORPO-
RATION, Limited, v. MILLS et al.**

No. 4376.

Court of Civil Appeals of Texas. Amarillo.

March 18, 1935.

Rehearing Denied April 15, 1935.

W. B. Handley, of Dallas, for appellant.

Edwards & Scott, of Dallas, Schlofman & Merchant, of Dalhart, and Works & Bassett, of Amarillo, for appellees.

HALL, Chief Justice.

Arthur Mills was an employee of the Ford Motor Company which, at the time of the accident resulting in Mills' death, was engaged in advertising the company's cars by what the record calls an "open air salon." They had finished an exhibition of their cars at Pampa and intended to put on another show at Dalhart. Mills was instructed by the manager of the company to drive what is called a "panel car" from Pampa to Dalhart, and the caravan, of which the car was a part, left Pampa about 11 o'clock p. m. October 11, 1932. The caravan reached Stratford, an intermediate point, about 6 o'clock in the morning of October 12th, where Arthur Mills was instructed to take the Ford car he was driv-

ing and go to Scott Motor Company at Dalhart and see if a wrecker had been sent out to pick up a disabled car of the caravan. The road from Stratford to Dalhart ran in a southwest direction, and Mills, in driving into Dalhart, entered the north portion of the city over Chicago avenue, which avenue he followed to where it intersected state highway No. 5. At that point he turned northwest, going on highway No. 5 for a distance variously estimated at three-quarters of a mile to two miles and a half, where, as the result of a collision with another car, he received injuries from which he died within a few hours.

On April 7, 1933, the appellant instituted suit, numbered 2116 on the docket of the district court of Dallam county, against Wilma Mills and her attorneys, and against F. A. Norman, as assignee or receiver, to set aside the award of the Industrial Accident Board entered March 4, 1933, directing appellant, as the compensation insurer of the Ford Motor Company, to pay to Wilma Mills certain compensation. The board further ordered appellant to pay the Peeples' Funeral Home $250, and her attorneys were awarded a certain percentage of the compensation which the board ordered advanced to Wilma Mills.

On April 7, 1933, Alberta Mills Griggs, the sister of Arthur Mills, instituted a suit to recover for herself as beneficiary and as next friend for Arthur Mills, Jr., a minor; said suit being numbered 2139 on the docket of the district court of Dallam county. She was joined by Drs. W. T. Travis and E. Lee Dye, and by the Loretto Hospital of Dalhart, where Mills died. This action was by way of appeal from an award of the Industrial Accident Board entered April 20, 1933, and it is alleged in the petition that Arthur Mills, Jr., was the son of Arthur Mills, deceased, and entitled to share in the compensation payable by appellant; that Alberta Mills Griggs was a dependent sister of Arthur Mills, deceased, and therefore entitled to share in the compensation; and that said physicians were entitled to recover $300, that being the reasonable value of their services in attending Arthur Mills immediately following the injury and up to the time of his death. The hospital claimed $64.35 as the reasonable charges due it from Mills.

By cross-action filed in suit No. 2139, appellant also perfected its appeal from the board's award of April 20, 1933.

Maude Mills, the widow of Arthur Mills, instituted her action seeking to recover for herself and as the guardian of the person and estate of her minor son, Arthur Mills, Jr. This suit was numbered 2148, and was filed August 5, 1933, in the district court of Dallam county, and is by way of appeal from an award of the Industrial Accident Board entered July 5, 1933, denying her claim for compensation on account of the injury and death of Arthur Mills. She alleged that she was the surviving wife of Arthur Mills, and that Arthur Mills, Jr., was the son of the deceased, and that she and Arthur Mills, Jr., constituted the only beneficiaries under the Workmen's Compensation Law who were entitled to share in any compensation payable on account of the death of Arthur Mills.

Before any of the cases were tried, the court ordered them to be consolidated, and ordered all parties to replead. In the consolidated suit Maude Mills, for herself and as guardian of her minor son, Arthur Mills, Jr., filed an answer and cross-action, seeking to recover all the compensation payable under the policy. W. L. Peeples, as owner of the claim originally asserted by F. A. Norman, receiver, intervened and set up his claim for funeral expenses in the sum of $273.27. Dr. Travis filed a trial amendment, alleging that the claim of $300 formerly held by him and Dr. Dye jointly had been transferred to him, and that he was the sole owner thereof.

The consolidated case was tried to the court, without a jury, resulting in a judgment in favor of Maude Mills against the appellant in the sum of $1,119.84, with interest, less the sum of $125, that being one-half of the funeral bill allowed to Peeples, and also less one-third thereof as attorney's fees to be allowed out of said recovery. The court also decreed that the minor, Arthur Mills, Jr., was entitled to recover $1,119.84, with interest, less the sum of $125, being one-half of the funeral bill, and less one-third thereof as attorney's fees. Judgment was also entered in favor of Dr. Travis in the sum of $300, and in favor of the hospital in the sum of $64.35. The judgment expressly decrees that the awards of the Industrial Accident Board dated March 4, April 20, and July 5, 1934, respectively, should be set aside and held for naught. Wilma Mills was permitted to dismiss her cross-action without prejudice; and that the appellant be discharged from all liability to Alfred P. Murrah and Luther Bohanan, her attorneys, and Alberta Mills Griggs. It was further decreed that the attorneys of Maude Mills and Arthur Mills, Jr., should recover one-third of

the amounts decreed to them, after deducting the funeral and hospital bills. Said attorneys were also allowed a recovery of $100 out of the sum awarded to Dr. Travis, and $21.45 out of the sum awarded the hospital; both of said items being allowed as attorney's fees.

The Employers' Liability Assurance Corporation, Limited, alone appealed.

■ It will not be necessary for us to consider in detail the numerous propositions urged by the appellant. By one proposition the appellant insists that because Maude Mills did not file notice of the death and institute her suit within the statutory periods of time, she is not entitled to recover. The undisputed evidence shows that Arthur Mills had abandoned his wife and child at Dallas, Tex., about four years prior to his death; that he was a negro, and had gone to Oklahoma City, where he was living with Wilma Mills, to whom he had never been married. The court found further that Alberta Mills Griggs was the sister of Arthur Mills, but was not entitled to recover as a dependent. The court further found that Maude Mills had good cause for not filing her claims and suit within the statutory period. In this connection the record shows that Maude Mills did not know of the death of her husband until some time after the accident. She did not know the name of his employer at the time of his death, nor that he was covered by Workmen's Compensation Insurance, or that she was entitled to make claim for compensation by reason of his death until just before her claim for compensation was filed with the Industrial Accident Board.

The record shows that Arthur Mills abandoned his wife and child, first going to Bonham, Tex., in 1925, and that she only saw him once after that, which was about six months after he had abandoned her. That the first time she heard of his death was in January, 1933, when Alberta Mills Griggs sent her sister-in-law to Dallas to get her son, Arthur Mills, Jr. That Alberta Griggs then lived in Wichita Falls. That Alberta Mills Griggs' sister-in-law said she came to get the child to go to a trial in court at Dalhart where Arthur had met with an accident while working for the government and had been killed. She said she refused to let the child go, and that later Alberta called her over the phone, telling her to bring the little boy at once. That she replied that she would not let the boy go unless Alberta would tell her who her husband was working for and how he was killed, and unless she had some papers showing that she was supposed to come. That some papers were sent her, and she immediately employed Scott & Edwards as her attorneys. That was in February. The record shows that her attorneys were reasonably diligent in ascertaining the facts and in instituting her suit, and we think the evidence is sufficient to sustain the court's finding.

■ While an injured employee is chargeable with notice that his employer is a subscriber under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), this rule does not apply to beneficiaries and dependents entitled to compensation. Texas Employers' Insurance Association v. McGrady (Tex. Civ. App.) 296 S. W. 920.

As stated by appellant in its written argument, the principal question in this appeal is, Was the deceased killed while in the course of his employment, and does the evidence support the court's finding to that effect?

The appellant concedes that Arthur Mills was in the general employ of the Ford Motor Company, which owned the panel car Mills was driving, and that he was driving such car with the consent and under the direction of the Motor Company on October 12, 1932, the date of the fatal collision.

A map, made a part of the statement of facts, shows that Chicago avenue, over which Mills came into Dalhart, runs parallel with the Rock Island Railway right of way and reservation in said city to where said avenue ends at the right of way of the Fort Worth & Denver Railway. At the intersection of these two railroads there is a signal tower, and in the yards of the Rock Island Railway there are numerous switch tracks upon which cars were standing on the morning Mills drove down Chicago avenue. Where Chicago avenue ends at the right of way of the Fort Worth & Denver Railway, near the intersection of the two railroad tracks, it intersects Elm street at a point where Elm street ends at the Rock Island right of way. From that point Elm street runs northwest. The map shows that there was no other street for Mills to follow, except Chicago avenue, over which he had entered the town. Naturally he turned northwest over Elm street, which he followed for two blocks, and which, we assume from the red lines on the map, was the route of highway No. 5. He then followed this highway beyond the city limits, where he was killed. The map shows a cut-off street which crosses the intersection of the two

railroads near the tower, running diagonally across both right of ways. The testimony shows that the conditions at that point were calculated to confuse any driver of an auto who was not perfectly familiar with the vicinity.

According to the record, it was not shown that Mills had ever been in Dalhart before, nor was it shown that he was told how far Dalhart was from Stratford. In the immediate vicinity of the signal tower of the two roads, outside of the railroad reservations, were several warehouses and buildings which obstructed the view of the town. Mills had not been informed of the existence of these buildings and other landmarks which the evidence shows to have been located in that vicinity, and one following the route which the evidence shows he followed, making a right angle turn to the northwest where Elm street and Chicago avenue met, without more definite directions, could not have followed any other course. He reached the intersection of these streets about 7 o'clock in the morning. He had been at work the day before, had been driving his car all night, leaving Stratford in the early morning hours, reaching Dalhart about 7 a. m. He must necessarily have been sleepy and drowsy and not in a condition to notice and read the signs on the several buildings. There is no testimony other than the physical facts which tend to explain why Mills turned northwest on Elm street or highway No. 5 after reaching the end of Chicago avenue. He had been instructed to go to Dalhart and "report to E. K. Hickman, who was in care of the Scott Motor Company's plant at Dalhart, and to stay on the highway and he would run right into the dealer's place as it was on the main street at the corner where the highway intersected." According to the map and the testimony, he failed to find the Scott Motor Company, and even though he stayed on the highway, he failed to run into the dealer's place. He may have concluded that he had not reached Dalhart, and that it was his duty to follow the highway until he reached the dealer's place.

We think the facts are sufficient to raise the issue, and at least make a prima facie case in the appellees' favor. There is no testimony which tends to show that he was dishonest or had any intention of defrauding his employer and appropriating the car, and there is no presumption that he was guilty of fraud or acted with a criminal intent. Under these facts, there is no room for a presumption of dishonesty or infidelity in the performance of his duties, and even though he passed through one part of the town of Dalhart, a presumption that he intended to steal the car is not warranted. There is no intimation that he was going on a mission of his own. Evidently the trial court concluded that Mills was lost and confused, and passed through Dalhart through ignorance and mistake.

The law seems to be settled by a number of decisions that where the employee acts through a mistake or inadvisedly in an effort to perform his duties, and is injured, he is nevertheless entitled to compensation because he is injured while in the course of his employment.

In the case of Marion Malleable Iron Works v. Ford, 82 Ind. App. 152, 144 N. E. 552, 553, it was held that the death of an electric crane operator by electrocution, after grasping a defectively insulated electric feed wire to remove it from the railroad tracks in the street, to which it fell when severed by his crane boom, was compensable because arising out of and in the course of employment, though he may have been negligent. The facts show that the wire had been insulated, but it was worn off in places.

In the case of D'Ambrosio v. Boston & M. Railroad, 81 N. H. 119, 124 A. 551, 552, it appears that an employee was doing what he was expected to do when injured, and was doing what the employer ought to have anticipated that he would do in the light of the instructions given him. The court held that his injuries arose out of and in the course of his employment within the Federal Employers' Liability Act.

In Benson v. Bush, 104 Kan. 198, 178 P. 747, 10 A. L. R. 1165, it appears that a station agent attempted to start a fire in the depot stove by the use of kerosene, which he mistakenly supposed to be signal oil. The stove exploded, and the agent was badly burned. Nevertheless, the court held that although he was mistaken in pouring kerosene into the stove when he thought he was pouring signal oil, his injuries arose out of and in the course of his employment, within the Workmen's Compensation Act.

See, also, Griffin v. Anderson Motor Service Co., 227 Mo. App. 855, 59 S.W.(2d) 805.

From a consideration of these facts and all the surrounding circumstances, we are convinced that there is sufficient evidence to support the court's finding. The rule, as stated in Moreman et ux. v. Armour & Co.

et al. (Tex. Civ. App.) 65 S.W.(2d) 334, 336, quoting from 17 Texas Jurisprudence 244, § 55, is: "In many cases one fact may be presumed from proof of another fact, in the absence of opposing evidence, and juries may indulge all reasonable inferences from the facts revealed to them by the evidence, or which unbiased and rational minds can properly deduce from the facts adduced before them."

Id. 248, § 57: "Several presumptions of fact may be drawn from the same set of circumstances, and the rule against the piling of one presumption upon another does not forbid the legal inferences and presumptions which may arise from a fact established alone by circumstances."

We have carefully considered the remaining assignments, and they present no reversible error.

The judgment is therefore affirmed.