## FORD MOTOR CO. v. WHITT.

No. 4390.

Court of Civil Appeals of Texas. Amarillo.

April 1, 1935.

Rehearing Denied April 22, 1935.

W. B. Handley, of Dallas, for appellant.

Underwood, Johnson, Dooley & Huff, of Amarillo, for appellee.

**HALL, Chief Justice.**

This case and the case of Employers' Liability Assurance Corporation, Ltd., v. Maude Mills et al., No. 4376 (Tex. Civ. App.) 81 S.W. (2d) 1028, heretofore decided on March 18, 1935, grew out of the same incident.

On the 12th of October, 1932, while the negro, Mills, was driving the Ford panel car, as shown in cause No. 4376, after leaving the city of Dalhart traveling toward Texline on highway No. 5, he collided with a Buick automobile driven by Mrs. A. N. Washburn, in which Mrs. Whitt, the wife of plaintiff, was seated. The result of the collision was that Mrs. Whitt was seriously injured, and instituted this suit to recover damages.

It is alleged, and the record shows, that at the time of the collision both cars were headed in a northwesterly direction, that is, toward Texline. It is alleged that the front end of the Ford car, which was driven by the negro Mills, collided with the rear end of the Buick car, and that the damages and injuries sustained by Mrs. Whitt were the result of certain specific acts of negligence on the part of the driver of the Ford car.

The case was submitted to a jury on twenty-seven special issues, in response to which the jury returned answers in favor of the appellee, assessing the plaintiff's damages at the sum of $12,500. The jury also found the reasonable amount of medical expenses to be $1,000, and of hospital bills $238.50. The plaintiff entered a remittitur in connection with the medical expenses, reducing the amount to $576. Based upon the verdict as reduced by the remittitur, judgment was entered against the appellant in the sum of $13,-314.50, with interest from May 10, 1934, at 6 per cent. per annum.

The appellant groups assignments of error Nos. 1 to 7, inclusive. These assignments urge as errors the failure of the court to instruct a verdict for the appellant because the evidence is insufficient to sustain the finding, and the refusal of the court to enter judgment non obstante veredicto. As a statement under this group of assignments, the appellant copies verbatim the testimony of eight different witnesses (being more than sixty pages of the statement of facts), and refers to some exhibits which were used while eliciting the testimony of said witnesses. We have examined this evidence carefully, and have concluded that the court properly submitted to the jury the issues of negligence, and the issue of whether the negro was acting in the course of his employment at the time of the collision.

What is here said also disposes of the eighth, ninth, tenth, and eleventh assignments of error. Under several propositions we are referred to the statement, consisting of more than sixty pages, following the first group of assignments. This statement contains evi-

dence bearing upon almost every issue urged by appellant. Court of Civil Appeals Rule No. 31 requires each proposition to be followed by a correct statement from the record, with a specific reference to the page of the statement of facts upon which the evidence or other proceeding necessary and sufficient to explain and support the proposition may be found. This rule is promulgated to enable the reviewing courts to more readily dispose of the large volume of business upon their dockets. In view of the fact that most of the Courts of Civil Appeals have dockets crowded with cases which they cannot hope to reach for several months, we suggest to counsel the necessity of complying with this rule. Miles v. Harris (Tex. Civ. App.) 194 S. W. 839; Laird v. Murray (Tex. Civ. App.) 111 S. W. 780; Gilmer's Heirs v. Veatch, 56 Tex. Civ. App. 511, 121 S. W. 545; Ft. Worth & D. O. Ry. Co. v. Keeran (Tex. Civ. App.) 149 S. W. 355; International & G. N. Ry. Co. v. Jones (Tex. Civ. App.) 175 S. W. 488.

The greater part of appellant's brief is an attack upon the first issue submitted to the jury. This issue is divided into three paragraphs, as follows:

"(a) Do you find from the preponderance of the evidence that on the morning of October 12, 1932 the driver of defendant's Ford car set out in the service of his employer, the defendant company, to discharge the instructions given him at that time?

"(b) Do you find and believe from the preponderance of the evidence that said driver of the Ford car, during his journey in question from his starting point to the place of the collision with the Buick car, continued without change in his mission?

"(c) Do you find and believe from the preponderance of the evidence that said driver of the Ford car, during said journey, did not form and act upon any intention or purpose to set aside his employer's business, either permanently or temporarily, and go on some other mission not related to his employment?"

■■ In fact, more than forty of the appellant's seventy-three assignments or propositions attack these three issues either singly, doubly, or collectively; most of the criticisms being iterations or reiterations of the same contentions in substance made in other assignments, but in slightly different verbiage. Revised Statutes, art. 1876, requires the reviewing court to consider only real issues properly presented in the briefs of counsel, but it is not required to consider substantially the same question over and over again.

On one occasion the Master said to His followers, "Use not vain repetitions as the heathen do, for they think they shall be heard for their much speaking." While the brief is an evidence of the zeal and industry of appellant's counsel, it is unusually and unnecessarily long.

■ Subdivisions (b) and (c) were objected to because they were unsupported by the evidence; because the affirmative answer of the jury to each was contrary to the overwhelming preponderance of the evidence; because each of the three issues were immaterial and evidentiary; were upon the weight of the evidence; because subdivision (a) submitted an issue which was wholly uncontradicted and not disputed by the defendant; because the words "set out in the service of his employer," as used in subdivision (a), were not defined by the court; because the words "without change in his mission," as used in subdivision (b), were not defined or explained by the court; and because the words "to set aside his employer's business," as used in subdivision (c), and the phrase "his employer's business," were not defined; because the words "employment" and "his employment," as used in subdivision (c), were not defined. In our opinion these objections are without merit.

■ The issues were further objected to "because the Court was attempting to submit the appellant's defense negatively," and because the charge failed to submit such defense affirmatively. The defendant insists that its principal defense, as raised by the petition of the plaintiff, defendant's general denial, and the evidence, was that at the time of the accident the driver of the Ford car had abandoned the purpose with which he originally left Stratford, and had deviated from the course of his employment and had embarked upon some mission of his own, for which reason defendant was not responsible for his negligence.

Subdivision (c) was not only an attempt (as appellant asserts) upon the part of the court to submit appellant's defensive theory, but in our opinion it was a successful attempt, and fairly submitted the issues to the jury. The plaintiff's right to recover depends upon proof of his allegations that at the time of the collision the negro, while driving the panel car, was within the scope of his employment and had no intention of abandoning his master's business. The burden of

proof as to these facts rested upon plaintiff. By its general denial, the appellant impliedly asserts that at the time of the collision the negro had intended to set aside his employer's business, either permanently or temporarily, and go off on a mission unrelated to his employment. If the issue had been submitted by asking whether the negro had acted upon and intended to set aside his employer's business, etc., the effect of such submission in affirmative language would have been to place the burden of proof on appellant, and this would have been error. The court is never required to submit the same issue twice in different form or language. Texas Employers' Ins. Ass'n v. Horn (Tex. Civ. App.) 75 S.W.(2d) 301; San Antonio, etc., Co. v. Dawson (Tex. Civ. App.) 201 S. W. 247; Texas & P. Ry. Co. v. Perkins (Tex. Civ. App.) 284 S. W. 683; Wichita Valley Ry. Co. v. Williams (Tex. Civ. App.) 6 S.W.(2d) 439; Hutton v. Burkett (Tex. Civ. App.) 18 S.W.(2d) 740; Speer's Special Issues, § 192.

As said in Texas Indemnity Ins. Co. v. Perdue (Tex. Civ. App.) 64 S.W.(2d) 386, 388:

"The appellant assails as error the action of the Court in refusing to submit what it asserts was an affirmative defense contained in its requested issue which is as follows: 'Do you find from a preponderance of the evidence in this case that plaintiff G. H. Perdue did not retain the capacity or ability to perform the same character of labor or employment after he sustained accidental personal injuries, if any, on October 24, 1931, as he performed prior to said injuries, if any?'

"The appellee pleaded that as a result of the injuries he received he suffered total permanent incapacity. This issue the appellant controverted under a general denial, and offered testimony by which it sought to prove the negative of this issue, but the evidence did not present an affirmative defense to said issue. The jury, in response to issues submitted, found that appellee had suffered total permanent incapacity as alleged. If this finding is correct, and we think it warranted by the testimony, then appellee did not retain the same capacity and ability to do the same character of work after the injury as he did prior thereto, and appellant was not entitled under this record to the affirmative submission of the negative of such issue." (Writ of error refused.)

■Complaint is made of the failure of the court to define the words, "which in a natural and continuous sequence," used in defining "proximate cause." There is a want of har-

mony in the decisions as to the necessity of defining these words. The following are some of the cases holding that a definition is necessary: Lone Star Gas Co. v. Haire (Tex. Civ. App.) 41 S.W.(2d) 424; Cooke-Teague Motor Co. v. Johnson (Tex. Civ. App.) 50 S.W.(2d) 399. And the following cases hold to the contrary: Rio Bravo Oil Co. v. Matthews (Tex. Civ. App.) 20 S.W.(2d) 342; West Texas Transportation Co. v. Hash (Tex. Civ. App.) 43 S.W.(2d) 152; Baldridge v. Klein (Tex. Civ. App.) 56 S.W.(2d) 897 (writ of error granted); Texas-Louisiana Power Co. v. Webster (Tex. Civ. App., writ of error granted) 59 S.W.(2d) 902. The latest pronouncement we have been able to find is by the Beaumont court in McDaniel Bros. v. Wilson et al. (Tex. Civ. App.) 70 S.W.(2d) 618, holding that it was not necessary for the court to define the terms, and the Supreme Court refused a writ of error. We, therefore, hold in accordance with the last pronouncement and the weight of authority that the court did not err in failing to give the definition.

■ Another ground of attack upon subdivision (c) of special issue No. 1 is that it is duplicitous. We overrule this contention. Speer's Law of Special Issues, § 187.

■ Appellant insists that the court should have defined the words "agency" and "scope of agency" in connection with these issues. The court does not use either term, and it is never necessary to define or explain a term not used.

■ One of the witnesses who helped the negro out of the ambulance and into the hospital was asked this question by appellee's counsel: "I will ask you to state whether or not you smelled alcohol or whisky at that time." The witness answered in the affirmative. The objection was that the question was immaterial and irrelevant to any issue in the case, improper, illegal, and prejudicial to the rights of the defendant, and because it referred to a damage not sustained by the pleadings because of the absence of any shown connection between the presence or absence of alcohol about the car and the defendant. The bill of exception shows that the court sustained the objection and directed the jury not to consider the question. We think the court erred in sustaining the objection. There was testimony that the negro in driving the car traveled from first one side of the road to the other. The fact that he went through a city the size of Dalhart, bristling with signs labeling the city on al-

most every block, would indicate that he was extremely drowsy from loss of sleep, an overdose of spiritus frumenti, or other cause. If he was drunk the plaintiff was entitled to have that fact established as part of the res gestæ. As said in 45 C. J. 1244, § 806: "Evidence of intoxication of a tort feasor or injured person at the time of an accident or injury for which damages are sought to be recovered is admissible on the question of his guilt or negligence which caused or contributed to the injury."

One witness testified that just before reaching the car, the negro was driving to the left of the center of the road, but swerved his car to the right so far that the collision occurred. This was certainly part of the res gestæ, and any evidence of his intoxication, including the smell of liquor on his breath, was clearly admissible. Houston & T. C. Ry. Co. v. Waller, 56 Tex. 331; Southern Traction Co. v. Kirksey (Tex. Civ. App.) 222 S. W. 702.

The next contention to be considered is that in that portion of the charge following the submission of a special issue with reference to the amount of damages to be assessed, the court instructed the jury to take into consideration certain elements. No error is shown here, since the instruction is in accord with the well-established rule in that respect. Texas Utilities Co. v. Dear (Tex. Civ. App.) 64 S.W.(2d) 807; Dr. Pepper Bottling Works v. Rainboldt (Tex. Civ. App.) 66 S.W.(2d) 496; Lyon v. Bedgood, 54 Tex. Civ. App. 19, 117 S. W. 897 (writ of error refused).

■■■Exception is also taken to the admonitory instruction in the charge, given in the following language: "You are instructed that you must confine your discussions and deliberations in this case to a consideration of the evidence introduced on trial of this case, and the legitimate inferences to be deduced therefrom; that is, you must not mention nor consider any evidence ruled out by the court, nor bring into your discussions any mention of outside matters or transactions of any kind that have to do with any experience, occurrence or matter foreign to this case, and not raised by the evidence admitted on this trial."

Admonitory instructions of this character have been frequently approved. 24 Tex. Jur. §§ 124, 126, and authorities therein cited. Subsequent events demonstrate that the admonition was highly proper in this case because appellant, in an effort to secure a new

trial, attempted to show that the jury had disregarded the instruction. The great multitude of cases which reviewing courts are compelled to reverse because jurors so frequently are guilty of the very things, which the court in this case charged them to refrain from doing, shows not only the propriety, but the necessity, of such instructions, and there would be fewer reversals if jurors were punished by trial courts for disregarding such instructions.

■■ Numerous bills of exception were taken during the argument made by appellee's counsel, J. B. Dooley and Ray Johnson, upon the ground that certain statements made by counsel were highly improper, inflammatory, unsupported by the pleadings or evidence, etc. Complaint is made that Mr. Dooley argued to the jury that the negro was not trying to steal defendant's car, and gave elaborate reasons supporting such argument, which argument was wholly unsupported by the pleadings. We see nothing wrong in that argument.

■■ A bill of exception shows that Major E. A. Simpson, in his opening argument for the defendant, said: "Let me say to you, Gentlemen of the Jury, first on behalf of co-counsel that is with me that he regrets exceedingly that Mr. Handley was forced to go back to Dallas on account of business of such pressing nature that he couldn't set it aside and over which he had no control. Let me say to you further that Mr. Dooley in his opening argument in this case to a large extent estimated correctly the position I shall take in arguing this case."

Counsel further stated that so far as he knew he had never honestly in any case attempted to influence a jury to answer a special issue against what counsel honestly believed to be the preponderance of the evidence, nor would he try to so insult the intelligence of the jury. He further stated that he had never seen a case where the negligence of the alleged agent of the defendant was as apparent as in this case; that he would not argue for the hundredth part of a second that plaintiff's wife had not been seriously injured as a result of the negligence of the negro in driving his automobile into the car in which she was seated. He admitted the seriousness of the injuries she had suffered. He then assured the jury that they had one of the hardest duties to discharge possible in deciding the defensive issues in the case fairly and to keep themselves from being prejudiced; that the defendant was

the Ford Motor Company and its agent a negro; that he agreed with Mr. Dooley that under the evidence, in the absence of a very serious operation that might or might not be successful, the lady was permanently injured, the greater part of which injuries were traceable to the jar she received when seated in the back end of the car at the time of the collision. Counsel then complimented the court for his careful consideration; complimented the jury and counsel upon the other side, stating that, while they strived mightily with one another, when it was over they were friends. He stated he never had left the court at any time after any trial that he did not feel that he had a fair shake at the dice, and that he felt that way then. He then proceeded in very forceful, logical, and persuasive language to present his client's defense. The excellent argument made at that time, and which has been mainly incorporated in the record, covers thirty-one pages of a typewritten brief. This argument was referred to by Mr. Ray C. Johnson as being an artful, smooth, and oily sort of argument, and the proposition asserts that Johnson undertook to impugn the apparent honesty, fairness and integrity of the argument made by defendant's counsel. It does not appear from the record that Johnson's estimate of the character of the argument was made in other than a spirit of levity. The bill of exception which sets forth Johnson's statement shows nothing harsh, unjust or bitter in his apparently good-natured analysis of appellant's argument.

■■■ Complaint is made because Mr. Dooley argued to the jury that the negro Mills had not formed and acted upon any intention or purpose to break off relations with his employer and do something else. No different argument could have been expected from Mr. Dooley as he represented plaintiff in the case, and it would have been highly improper and unjust to his client for him to have admitted that Mills was trying to steal the car. We may assume that he had been paid to make that contention. His illustration relating to a trip by a supposed servant who had been sent down to Happy taking the right-hand fork of the road at Canyon and going to Hereford through mistake was not, in our opinion, unjust or improper. As we understand the law, when an employee acts through a mistake or inadvisedly in an effort to perform his duties and is injured, he is entitled to compensation because, though traveling the wrong road under a mistake, he is still in the course of his employment. Marion Malleable Iron Works v. Ford, 82 Ind. App. 152, 144 N. E. 552, 553; D'Ambrosio v. Boston & M. R. Co., 81 N. H. 119, 124 A. 551; Benson v. Bush, 104 Kan. 198, 178 P. 747, 10 A. L. R. 1165; Griffin v. Anderson Motor Service Co., 227 Mo. App. 855, 59 S.W.(2d) 805. The same rule would apply in favor of the surviving husband where an employee, acting under a mistake of fact but still within the course of his employment, through his negligence fatally injures the claimant's wife.

■■■ It is further insisted that Mr. Dooley improperly stated to the jury that defendant's counsel would say that an operation on plaintiff's wife might be performed. The quotation above from the argument of Major Simpson shows that he was correct in his forecast. Mr. Dooley followed this with a statement that a major operation might or might not be successful, and would put the patient's life in jeopardy. This is a matter of common knowledge, and is not a basis for valid objection. We find nothing in the argument of Mr. Dooley or Mr. Johnson which requires a reversal of the judgment on that account. Counsel are given much latitude in arguing issues of fact, and this applies to inferences drawn from evidence offered or evidence not offered, if it reasonably appears it could have been offered. Mr. Johnson referred to the fact that Mrs. Whitt's testimony describing in detail her sufferings, her two periods of confinement in the hospital, her ability to work both before and after her injuries, and the testimony of the physicians telling as experts of her condition, had not been controverted or denied by any witness, any other physician, or even the neighbors who knew Mrs. Whitt. We think the matters complained of are governed by the rules announced in the following cases, from which, for the sake of brevity, we will not quote: Dallas, etc., Ry. Co. v. Garner (Tex. Civ. App.) 42 S.W.(2d) 665; Corn v. Crosby C. Co. (Tex. Com. App.) 25 S.W.(2d) 290; Marcus v. Huguley (Tex. Civ. App.) 37 S.W.(2d) 1100; Cook v. Carrol, etc., Co. (Tex. Civ. App.) 39 S. W. 1006; Houston Electric Co. v. Potter (Tex. Civ. App.) 51 S. W.(2d) 754; Texas Electric Ry. v. Gonzales (Tex. Civ. App.) 211 S. W. 347 (writ of error denied).

■■■ The only remaining contention to be considered relates to the alleged misconduct of the jury in discussing the matter of attorney's fees, and the probability of the

appellant's settling the case if the amount awarded was not too high. The court heard several jurors with reference to these proceedings and held that there was nothing said with reference to the attorney's fees which would justify him in setting aside the judgment and granting a new trial, and after a careful review of the testimony of the witnesses, and the uncertainty as to what, if anything, was said, we approve the trial court's action. It appears that the members of the jury were divided into two camps with reference to the amount of damages, designated in the brief of counsel as the "high camp" and the "low camp." One member of the low camp, favoring a small verdict, made the suggestion that if the damages were not assessed too high, the company would probably settle it without appealing the case. It further appears that his suggestion was adopted and acted upon to some extent by those who favored a larger verdict. Since this misconduct militated in favor of the appellant, it has no right to complain. As held in St. Louis, etc., Co. v. Cole (Tex. Com. App.) 14 S.W.(2d) 1024, where one juror suggested that if the verdict was not made too big the railroad would not appeal and would pay it, the suggestion was in favor of the complaining party, and that, because it appeared that such action brought about a lesser verdict than would otherwise have been rendered, the railroad company was in no position to complain.

The court having passed upon these matters, what was said in Bradley v. Texas & P. R. Co. (Tex. Com. App.) 1 S.W.(2d) 861, 865, by the Commission of Appeals, is pertinent. Among other things, this language is used: "The trial court under such a view was called upon to determine whether a mere mention of attorney's fees, followed by an immediate admonition of the juror that under the court's charge it was improper to consider such fact, leaves the matter in doubt as to whether the juror was improperly influenced. We think, under this view of the case, the trial court did not abuse the discretion vested in him in overruling the motion for new trial."

In the instant case, the jurors testifying upon the issue said that the matter of attorney's fees was not taken into consideration in fixing the amount of the verdict. The judgment is not excessive.

We find no reversible error, and the judgment is affirmed.